McCay, Judge.
By the laws of this State, seduction is treated as a most heinous crime, and is punished with the very longest period of penal *210 servitude known to the Code, except that of perpetual imprisonment. If the crime be in fact committed, this is a most just and salutary law, since it is hardly possible to conceive of a more base and dastardly deed. It is a grievous *wrong, done by a selfish, heartless villain, against a helpless and innocent victim, and it is most justly denounced by all good people as a fiendish offense against God and against society. The man who is guilty of it has betrayed and ruined a woman; has, by artful and fraudulent practices, seduced her from the paths of virtue, inspired her with lustful desires, and, finally, led her, perhaps, at last, a willing victim to crime. It is this deliberate, fraudulent, artful leading into crime of a trusting, pure-minded girl from chaste thoughts and pure desires, that gives such moral turpitude to the offense. Of the actual fornication both are guilty — guilty even under human laws — and both are subject to the same penalty. It is the seduction of the woman by the man that forms the gist of, gives the name to, and makes the heinousness of this offense. Neither the language nor the spirit of the statute makes the crime to consist solely of procuring, by fraudulent means or otherwise, a woman hitherto undebauched to allow of illegal sexual intercourse with her. The means used must be fraudulent and deceitful, and must “seduce a virtuous unmarried female — induce her to submit to the lustful embraces of the seducer, and allow him to have sexual intercourse with her.” All the language, and all the sentences and clauses have a meaning. The woman must be seduced — led away from virtue — induced to permit lustful embraces, and, finally, to commit the crime of fornication. And this is the invariable history of cases of seduction. The seducer first gets the confidence of his victim by a promise of marriage, or by some other fraudulent means; he next seduces her away from modest and pure and chaste thoughts; then follows lustful toyings and-lascivious embraces, until the poor girl, her confidence betrayed, her chaste thoughts turned into lustful desires, alloivs and consents to crime. The woman who, in consideration of a promise of marriage, consents to fornication with the promisor, is not seduced. She sells herself just as completely as if she had given the same consent in consideration of a promise of money. The whole purport of the statute, its fundamental, essential idea, is, that the seducer has, by his arts, first defiled the heart, and made *lust and desire to dwell where he found chastity and purity, and having thus disarmed his victim, procured an easy surrender. He must “seduce a virtuous unmarried female, and induce her to submit to his lustful embraces and allow him to have sexual intercourse with her.”
An indictment would not be a good one under this law, if it simply charged that the defendant had, by persuasion and promise of marriage, procured a virtuous unmarried woman to allow him to have illegal sexual intercourse with her. The words and the sense of the statute require it to be stated that the woman has been “seduced and induced to submit to the lustful embraces *211 of the seducer, and allow him to have carnal connection with her.” Each of these phrases is something more than mere tautology and useless verbiage, and is to be treated as having a meaning, and they are all significant of the legislative will.
I have been thus particular in expressing my understanding of what it is that makes the crime of seduction, because it almost necessarily follows that if this be the meaning of the statute, the defendant is entitled to a new trial.
The indictment upon which the trial was had contains three counts. 1st. One charging the seduction by persuasion and promises of marriage. 2d. One charging the seduction by false and fraudulent means. 3d. One charging it by persuasion and promises of marriage, and by false and fraudulent means. The second and third counts, whilst they charge the seduction by false and fraudulent means both set forth, as a part of the false and fraudulent means, the persuasion and promise of marriage, relied on and set forth in the first count. The promise of marriage set forth is to this effect: That .he (the defendant) would marry the said Emma I. Chivers, so soon as his wife should die, he at the same time, saying that his wife was in bad health and would die in less than two years. To the whole indictment, as well as to each count of it, the defendant pleaded a special plea'1 in bar, as well as not guilty. This special plea was to the effect that at the time the said crime was charged to have been committed, as well as for *several years previous thereto, the defendant was a married man, living daily with his wife and children, and that this was well known to Miss Chivers, who was a sensible and well educated woman.
To this plea there was a demurrer, and the demurrer was sustained by the Court and the plea stricken.
So far as this was a plea in bar to the whole indictment, we think the Court was right. The issue presented by the plea assumed the law to be that a married man, known by the woman’ seduced to be such, cannot, under any circumstances, whether by promise of marriage or otherwise, be guilty of the crime of seduction.
We are not prepared to admit this to be the law. The words of this section of the Code are: “Any person, who, by persuasion and promise of marriage, or by other false and fraudulent means, shall seduce a virtuous unmarried female,” etc. There is also a provision that the defendant may condone the offense by marrying the woman seduced, or by a bona ñde, continuing offer to marry.
•It is contended that as the female seduced must be unmarried, and as there is a provision for condonation by marriage or by an offer of marriage, it was intended that a married man could not be guilty of the offense. But we can see various reasons why this is not a fair construction of the law. A married woman is better skilled against the arts of the seducer than the in-, genuous, simple-minded girl, and she cannot so surely be treated as the victim of a villain. Besides, the words of the law are not *212 any unmarried man, but “any person,” and we think it is straining that portion of the section which permits the condonation beyond its meaning to give it the effect contended for. It is rather an aggravation of the wrong that even the reparation permitted is impossible. The act has two clauses. “If any person, by persuasion and promise of marriage, or by other false and fraudulent means, shall seduce,” etc.
That a married man may be guilty of seducing, by false and fraudulent means, a woman who knows he is married, is, *we think, incontestible. He may win her confidence in many ways. He may be her guardian, her near kinsman. He may, as is charged in this case, be her teacher and spiritual adviser; she may honestly and chastely honor, confide in and trust him. She may look to him as the fountain of truth and purity, so that his acts, his words and his opinions shall be to her as those of a God. Under such a state of circumstances, the girl' is as much a victim as though her confidence were the product of that tender and confiding relation existing between plighted lovers, bound by pledges to be consummated at the altar of marriage. Indeed, as all experience has proven, the influence which a priest may acquire over a devotee is, perhaps, of all others, the most complete, and whilst she may by it be led to a purer life and to a holier condition, it is possible that she may be led by it blindfold into sins of the deepest die. We do not think, therefore, that this plea was a good plea in bar to the whole indictment. But whilst we so rule, we are, at the same time, of opinion that the plea was a good plea in bar to the first count of the indictment — the count charging the seduction on the persuasion and promise of marriage alone. According to our understanding of this statute, it requires that the woman should be betrayed by some sort of false and fraudulent means. The statute says by persuasion and promise of marriage, or other false and fraudulent means. In this is implied that the promise must also be a fraud, one calculated to deceive, one that may win the confidence and allay the suspicions of ah artless, unsuspecting maiden. Can a promise of marriage made by a man having already a wife, with whom he is at the time living, and this well known to the woman receiving the pledge, have such an effect? Can a woman of ordinary sense, who has allowed such a promise to win her confidence, claim to have been seduced by arts and persuasions into the sin of fornication ? Can she be said to be a victim if she has trusted to the vows of a married man that he would marry her, knozving as she does that he cannot and will not marry her? We think not. The woman who listens to such a promise is either a fool or she is a bad woman already. The Confidence of no good woman could be acquired by any such a promise. It could not be made the means of seduction. It is upon its very face a warning to beware. It is a promise so improper in itself, so contrary to all notions of delicacy, true virtue and good morals, that any girl of even ordinary chastity must instead of confiding in, be shocked by it. No rea *213 sonable human being could confide in such a promise or be betrayed by it into confidence in the man who made it. The girl who listens to such a promise is not betrayed, and if under such an excuse as that she toys and is finally a criminal, she is not seduced, but has run, of her own lusts, into sin.
By the way in which this indictment is drawn, whilst this promise of marriage is made a leading ingredient in each count, yet as only the first count is based on persuasion and promise of marriage alone, the plea though a good plea in bar to that does not meet all the false ánd fraudulent means charged in the other two counts. We think, therefore, that even if the plea were fully sustained by proof on the trial, there was still matter set forth, which if true, would authorize a judgment.
It is complained that the Judge erred in charging the jury that if the defendant seduced Miss Chivers by any of the means charged, he was guilty. As the promise of marriage is set forth in each count, and is alleged to be one of the fraudulent means by which the seduction was effected, it follows from what I have said that this charge was error. To make a fraud, there must be confidence and a betrayal of it. A pretence, that is upon its face a sham, that can deceive nobody, that no modest woman would listen to for a moment, cannot beget confidence, and cannot be the means of betrayal.
Again, it is charged as error that the Court told the jury that if the girl had never before had carnal sexual intercourse with a man, she was a virtuous woman in the sense of the statute, and that the law presumed her to be such until it was otherwise proven. I am disposed to agree with the Judge as to the presumption of law. It is true the law presumes the prisoner innocent until he is proven guilty; but it does not follow that, in making out this proof, the State can use no *presumptions. The law will presume, for instance, that the prisoner is a sane man; it will presume malice from certain acts; it will presume that the sun rose and set, as it has always done; it will presume that witnesses tell the truth, unless something appears to the contrary. Indeed, as is well settled ope may be found guilty of even murder on proof of facts from which ■his guilt is presumed. The natural, normal condition of an unmarried female is virtuous. If she be less than this, it is a fault, and it ought not to be presumed in any investigation. But I do not agree with his Honor in his charge as to what constitutes a virtuous woman in the sense of this section of the Code. The whole of the section is to be taken together, and the word virtuous is to have such a meaning as does not make other parts of the section meaningless. Under the definition the Judge gave to the jury of this word, it means simply a woman who has never before been guilty of fornication or adultery. She may be a bad woman at heart; she may be filled with all uncleanness; she may be burning with lust, and yet, if, through lack of opportunity, she be yet not an actual violator of the law, she is a virtuous woman in the sense of this law, and one may be guilty of the fiendish *214 crime of seducing her, inducing her to submit to his lustful embraces, and to allow of criminal intercourse.
I do not think so. It needs no fraud or vile arts to make an actual criminal of such a woman. , She cannot be seduced from virtuous, chaste thoughts to lustful desires and lacivious passions —she is there already; and the man who, by promise and persuasion, gets her to break the law, has only violated the last clause of this statute. The crime he commits is neither within the letter nor the spirit of this law. The woman is not a victim.
It is said no other distinct line can be drawn than' that drawn by the Judge. And that is true. But where is the necessity of any fixed line at all? The persuasions, the arts and frauds of ■the defendant in committing the crime are not, and cannot be so reduced to exactness. Why should the character of the woman be determined only by a rigid rule ? She is not *on trial. If it were a crime not to be virtuous, there would be propriety in fixing the terms of the crime, to use words that would show precisely how the guilt should be proven. But here the crime is the seduction of virtue, and I can see no propriety in any Other line than that which satisfies the mind of the jury. It is said, too, that facts which under one set of circumstances show want of virtue — that is, of a chaste mind — might not do so in other circumstances. But this is true, even if the standard be as contended for. In this State the acts and practices described by Mr. Irving as common even between virtuous minded people among the Knickerbockers, or by Hogg and Scott, among the Scotch, would justify a jury in finding actual guilt before the law.
In my judgment the question of what is a virtuous woman ought to be left in each case to the jury, since so far as it is evidenced by circumstances, it must depend upon education and on the state of society in which the girl has been reared. To require the defendant, in order to defend himself from a criminal charge, to start with a presumption of the virtue of a girl, and prove her want of virtue in this sense by actual direct proof, is absurd. The woman herself cannot be compelled to answer, no man can be made to swear, since a witness cannot be required to confess a crime. Such things are invariably done in secret and the proof would be practically impossible. Nor is the reply to the position I have taken that this rule takes away the protection of the law .from a girl who, playfully or in the mere spirit of fun or flirtation, and from habits of life or the customs of society, does acts which squeamish people deem improper. This utterly misconceives the position I have taken. I insist upon it that a woman is not* a “virtuous woman” whose heart is lascivious, whose mind is corrupted and defiled by lustful desires and unchaste wishes, and that this may be proven by other facts than ■proof that will satisfy the mind of an act punishable by law. What that evidence may be or may not be, I would leave to the facts of each case. Do they satisfy the jury that the *215 girl is impure, lustful, lascivious, that her heart has gone *away from virtue, that however her body may yet be not actually defiled, yet that all true chastity has ceased within her, and that it needs no arts or seductions, but only opportunity, for her to be guilty of the act of crime ? The definition given by the Judge makes a virtuous woman to be one of a certain physical condition.
Virtue is a thing of the heart and mind. A woman who has been guilty of fornication has done an act showing that she is not of a virtuous heart, or, at least, that she was not at the time of the act. The evidence, it is true, is very conclusive, but it does not at all follow that she is a virtuous woman because she has not broken the law, no more than it follows that a man is honest because he has not violated the law against stealing.
To be guilty of the crime of seduction is one thing, and to induce a woman to commit fornication is another. The crime of seduction involves purity of heart and a chaste mind in the woman seduced. She must be led away from virtue. The definition of the Judge would exclude a woman who, years before, had been guilty of fornication, but who had repented and was now perfectly virtuous; perhaps the more so that she once had sinned and repented in sackcloth and ashe.s. And this definition of a seducible woman is, as I believe, contrary to the general sense of the word, as used both in England and America.
In the United States, seduction is made a crime, in several of the States, to-wit: in Pennsylvania, Ohio, New York, Min-1 nesota, Iowa, Oregon, and in other States. In all of these States the crime consists in seducing a “hitherto chaste female,” or “of previous chaste character,” or “of good repute for chastity,” and in none of them, so far as I can find, has it ever been held that actual criminal sexual intercourse is the only test of unchastity. It is hardly to be supposed that it was the intention of our Legislature to lower the legal standard to be applied to the victim of the seducer. We all speak the English language. The poetry and the literature of our mother tongue, which fix the meaning of words, have painted the character *of a seducer in terrible colors, and it is a fair presumption, especially in construing a criminal law against the prisoner, that this is the character, the betrayer of female innocence, that was intended to be punished. This is the character punished in other States; this is the natural, long understood meaning of the words, and this, in my judgment, is the only sense of the word which will make the different clauses of this statute all have a meaning, and rescue it from (what appears to have been its understanding in this trial,) the imputation of being an act to punish a man who buys a woman to consent to gratify his lust by a promise to marry her, a consideration which may or may not be better than a money consideration, according to the character of the man who pays the price. I think, too, that this Court, in the case of Mann vs. The State, 34 Georgia, 1, virtually decided this question. In that case, Mann had been convicted of violating this very law. *216 This Court granted him a new trial, because he had, after the trial, discovered he could prove by a witness that before the seduction he had seen the woman, after night, come out of her father’s house with a man with whom she was on familiar terms, go some fifty yards from the house and lay down, and that, from what he had known of the girl, it was his opinion that she was of easy virtue. Surely this would not prove the girl to be guilty of fornication, and the Court, in granting a new trial, could only have done so because the proof would show the woman not to be a modest, pure minded woman. The proof made in this case by Collier is such that, if true, this girl was not a good girl before Wood met her. The charge of the Court, in effect, withdrew this evidence from the jury as proof of a want of chastity, because it did not show actual crime.
In this, I think, there was error. If Collier told the truth this girl was not seduced. She was ripe for crime already, and only needed the chance to fall into it in fact. I do not intend by this to say that the jury were bound to believe Collier, but I think the Court erred in his charge by declaring to the jury, in effect, that the defendant might be guilty *though Collier spoke the truth. No girl, in my judgment, who is so far given up to unchaste thoughts and lustful desires as Collier testifies to, can, in any fair sense of those words, be called a virtuous female. It is a perversion of terms that shocks all sense of propriety in the use of- language. As the case went to the jury, this evidence of Collier, Kirkpatrick and others, was before them only to contradict Miss Chivers when she swore that no man except Wood had been guilty of such freedom with her person. It was only ther,e as to her credit. In our judgment it was entitled, if true, to far more weight than this. It went to show that Wood was not guilty, that the whole story — of an innocent, pure-minded girl, wrapped up in holy reverence for her minister, and led by him, through her confidence in his sanctity, to believe a lie and go into sin, thinking it right — is all a sham. The girl who thus plays with a viper, who thus stands upon the brink of the river of vice and indicates her readiness to plunge into its polluted waters, is not the material of which saintly devotees are made. She has drank of the fountain of carnal desire. The eyes 'of such a woman are opened; her ideas of morality and holiness are not at the behest of a saintly hypocrite; she is too old, too much of earth and of the flesh, to be borne off to those serene heights where her saintly heart may be beguiled into thinking wrong, right, and lasciviousness, purity. One can conceive of simplicity and innocence thus wrapped up in a supposed apostle, but if Collier’s story be true, this girl was not capable of losing herself in any such fanaticism.
We think there was error also in the refusal to charge, as requested by defendant’s counsel, that “one reason for disbelieving a female witness is the fact that the witness discloses in her testimony acts done by her and habits of life pursued by her which exhibit moral turpitude.”..
*217 This is the precise language of this Court, in the case of McDaniel vs. Walker, 29 Georgia, 180, and it is law if the facts of this case make it pertinent. One female witness here testified, that for eighteen months she had been in the practice of frequent illegal sexual commerce with the pastor of the *church to which she belonged; that she was in the frequent habit of going from the prayer meeting to their place of guilt; that she would of her own motion follow him to his home, wait until his family prayers were concluded, and then steal from her hiding place into his study, where, almost in sight of his wife and children, she would join with him in the violation of all the laws of God aüd man, and even of decency, and then go her way alone to her mother’s house, she, too, all the while, a member of his church and communing with him and her fellow members. Such guilt, duplicity and hypocrisy is very great, and it was proper matter for the jury to call to mind in fixing the credit to be given to her statements.
Tt seems absurd to say that the prisoner is not to have the benefit of any doubt of the truthfulness of such a witness, because he was the author of and joined in it.
That is what is to be tried, and such a position assumes his guilt. The law presumes he is innocent until proven guilty, and this position that against him the woman is to be believed, because he is guilty, takes for granted the whole issue on trial.
Nor can it be said that this charge was improper as asked, because it points out too clearly the witness and amounts to a presumption of the fact. The Judge can only charge upon points involved in the evidence, and if the statement of the law is so pertinent to the facts before the jury as to make it fit with startling accuracy, that is no reason why the law should not be given.
It would be a very liberal construction indeed to say that this request was given under the general remarks of the Judge as to the credibility of witnesses. It is only by rather a strained inference that such a view can be sustained. All that can fairly be said is, that the charge as given is not inconsistent with this request. But our statute means more than this. It says that a new trial may be granted if the Judge refuse to give a pertinent legal written request in the language requested. Revised Code, section 3664.
It is ordinarily proper to give the charge in the language requested ; surely that is contemplated by the statute. True, *it sometimes happens that this is verbose, wanting in precision, and we would not make it necessarily error to refuse the exact language. But clearly, the party has a right to have his written request, if it be legal, pertinent and material, given distinctly and in substance. It ought not to be left to the mere inference of the jury, unless that inference be very plain and necessary.
We think there was error in refusing to draw the distinction between seduction and fornication and adultery, because, in our *218 opinion, the jury might, under the indictment, and under the evidence, have found the defendant guilty of adultery and fornication. It is a settled rule that-under a charge of a higher offense of the same nature, if the higher necessarily includes the lower, the jury may find the defendant guilty of the lower. As in murder, the jury may convict of manslaughter, assault and battery, or even of assault. Seduction is a felony. It necessarily includes the other. One cannot be guilty of seduction unless he be also, as part of the same act, guilty of adultery or fornication. On the principle that on an indictment for the felony, the jury may find defendant guilty of the mere misdemeanor, it would seem to follow that under an indictment for seduction the prisoner may, if the proof justify it, be found guilty of' adultery or fornication, as the facts show which of the offenses it is. In New York this very question has been so decided, and the general rule, where the larger offense includes the lesser, -is well settled by the decisions of our own Court.
Judgment reversed.