# Henderson v. The State.

*Indictment for Obscene Language in Presence of Female.*

1. *Constituents of offense.*—Abusive, insulting, or vulgar (*i. e.*, obscene) language, uttered in a public highway, near enough to the premises of the prosecutor to be distinctly heard, and actually heard by his family, or by any member thereof, must be regarded as uttered in their presence (Code, § 4203), and as a violation of the statute.

FROM the Circuit Court of Pike.

Tried before the Hon. H. D. CLAYTON.

The indictment in this case charged that the defendant, King Henderson, "upon the public highway, near the premises of James Blackman, and in the presence of Ruthy B. Blackman, a female, did make use of abusive, insulting, or vulgar language, to-wit," specifying the words. The defendant pleaded not guilty, and issue was joined on that plea. "On the trial," as the bill of exceptions states, "James Blackman, the prosecutor, testified, that he lived immediately on the side of the public road leading from Troy to Elba, and occupied as a residence what was formerly used as a store-house on the side of the road, about two miles south of Troy in said county; that on or about the 14th February last (1880), defendant drove by his house in a wagon with three or four others, and when he got to a blacksmith shop, about thirty or forty yards from his house, he addressed the blacksmith, calling him Jim, and said, 'G— d—n you, you are a blacksmith, but I aint, and I don't want to be'; that he then passed by the house, and when he had gone about thirty yards beyond he turned around, and repeated the language used in the indictment. The witness stated that, at the time the language was used, he was standing within a few feet of his house, and his wife was standing in the front piazza of the house, and heard the language as above stated. Witness' wife also testified substantially to the same thing, declaring that she heard the language set out in the indictment; but she differed from him in stating that the language was used by the defendant when the wagon got in front of the house, or just beyond. Mrs. Johnson, another witness, testified, that she lived near said Blackman, and heard the defendant cursing as he passed along the road, but could not repeat his words; that she did not hear him use any vulgar

[Henderson v. The State.]

language, nor the language set out in the indictment; that he was drinking when he passed, and he did not stop his wagon at all. The testimony of the defendant's witnesses tended to show that he was driving a wagon from Troy belonging to his employer, and was drinking; that he was cursing up to the time he got within about seventy-five yards of Blackman's house, but desisted until he got from forty to seventy-five yards beyond the house, when he commenced cursing again; that he had no animosity at the time to the blacksmith, and that the words used were not used in a manner to be abusive or insulting to him; and that they did not hear him use the language charged in the indictment.

"This being substantially all the evidence in the case, the court charged the jury, among other things, that if the defendant used the language charged in the indictment, along the public highway in this county, within twelve months before the finding of the indictment, near the premises of James Blackman, and in the presence of a female on the premises, he is guilty, although the words may not have been addressed to any particular person. To the latter part of this charge the defendant excepted.

"The court charged the jury, also, that if the defendant used abusive, insulting, or vulgar language, as charged, along the public highway, near the premises of James Blackman in this county, within twelve months before the finding of the indictment, in the hearing of a female on the said premises, he is guilty, if she heard it; and it is immaterial whether he was ten steps or a hundred yards distant. To the latter part of said charge the defendant excepted."

The defendant requested the court to instruct the jury as follows: 1. "Before the defendant can be convicted in this case, the proof must show that the language was used in the presence of some member of the family of the owner or possessor of the dwelling-house; and if it was used thirty, or forty, or seventy-five yards from the premises, and upon the public highway, then the defendant is not guilty." 2. "If the jury should find, from the evidence, that the defendant only used profane language, then he is not guilty, unless such language was used in an insulting or abusive manner to the owner of the dwelling-house." 3. "If the jury should find, from the evidence, that the language used was not addressed to any particular person, but was merely profane, and was the result of intoxication, the defendant is not guilty." The court refused each of these charges, and the defendant excepted to their refusal. The bill of exceptions does not show that these charges were in writing.

[Evans v. The State.]

J. D. Gardner, for the defendant.

H. C. Tompkins, Attorney-General, for the State.

STONE, J.—We do not think the Circuit Court erred in its rulings in this case. The intention of the statute was to protect the house and family, or any female that might be there, from the annoyance and offense that would be inflicted on them, if abusive, insulting, or vulgar (obscene) language, were uttered in their presence. The places protected against such offense, are the dwelling-house, curtilage thereof, and the public highway near such premises. We think such language, uttered in a public highway, near enough to the premises to be distinctly heard, and actually heard by the family of the owner of the premises, or by any member thereof, &c., must be regarded as uttered in their presence, under section 4203 of the Code of 1876.

The judgment is affirmed.