## DISHAROON *v.* THE STATE.

1. An indictment which charges that a married man had sexual intercourse with an unmarried woman, with her consent, is a good indictment against him for adultery and fornication, although it denominates the crime seduction and contains allegations ineffectually undertaking to set forth that offense.
2. The evidence fully warranted the verdict for adultery and fornication, and there was no error in denying a new trial.
February 27, 1895.

Indictment for seduction. Before Judge GOBER. Dawson superior court. August term, 1894.

R. P. LATTNER, THOMAS HUTCHESON and H. H. PERRY, for plaintiff in error.

GEORGE R. BROWN, solicitor-general, *contra.*

ATKINSON, Justice.

In the indictment against the defendant the offense was designated specifically as that of seduction. The indictment charged the act of sexal intercourse between the accused and an unmarried woman ; alleged that she, previous thereto, was a virtuous female, and that her consent for the defendant to have carnal knowledge of her person was induced by deceitful means and artful practices and by false and fraudulent means ; that the female alleged to have been seduced was of tender years, being only thirteen years of age, and that this defendant, being himself a married man, did then and there represent to her that he loved her, and did then and there win her confidence and affection; that he represented to her that it would not be wrong to yield to his lustful embraces, and it would not be wrong to allow him to have carnal knowledge of her person, that it would not hurt or injure her character, and that if she would consent to sexual intercourse with him, he would leave his wife and take her; that she being young and inexperienced, having implicit confidence in the defendant, and believing the representations he made to her were true that it would not be wrong, that it would not injure her character, she then and there yielded to his lustful embraces and allowed him to have carnal knowledge of her person. These representations by the defendant were alleged to have been false and fraudulent, and the deceitful means and artful practices resorted to to induce her consent.

To justify a conviction for the offense of seduction, the consent of the female seduced must have been induced, either by persuasion and promises of marriage, or by other false and fraudulent means. It is not insisted in this case that the consent of this female was induced by persuasion and promises of marriage. In order to justify a conviction upon persuasion or solicita-

tion to the criminal act, it must appear that such persuasion or solicitation was coupled with the promise of marriage, and that the promise of marriage established such a relation between the parties as that the female was induced, under the influence thereof and upon expectation of its realization, more readily than otherwise she would have been to yield to the persuasion or solicitations of the seducer. A consent to the act of sexual intercourse, based upon a promise of marriage as a consideration moving to the female alleged to have been seduced, and upon the faith of which she consents to the sexual act, takes the whole transaction out of the definition of seduction and makes it purely meretricious, —the relation thus established being wholly inconsistent with the idea of that virtuous consent involved in the commission of the offense of seduction. Solicitations, however earnest, coupled even with a promise of marriage, whereunder a woman simply undertakes to sell her person in consideration of a promise of marriage, do not make it a case of seduction. To constitute a promise of marriage the incriminating element in a case of seduction, the woman must believe it to be a *bona fide* promise, and she must yield to the solicitations of her pretended lover, and not merely submit to the demands of her purchaser. The fraudulent means resorted to must be such as mislead the party upon whom they are practiced, and induce her, upon a misapprehension of the true state of affairs, to yield to the lustful embraces of the man who thereby induces her consent. A fair illustration of this may be found, where a man induces a woman, upon false representations that he is an unmarried man, to enter into a marriage contract, and, under the relation thus seemingly established, to consent for him to have carnal knowledge of her person. She must be entrapped into giving her consent, not by solicitation and persuasion only, but by these, supple-

v 95-23

mented with some false token by means of which she is deceived. It does not sustain the charge of seduction to show that some moral wrecker, standing on the barren shores of vice and immorality, with a siren song has beguiled his passing victim, however much such melodies . may have pleased the ear or tickled the fancy; but it must also appear that by the exhibition of a false beacon, he gave assurance of innocence and promise of safety. He must first allure, then tempt, then persuade, and, she yielding, the offense of all others, save one reprobated of God and man, becomes complete. In its punishment the law cannot be too swift, too sure, too uncompromising. Mankind is little disposed to extenuate or excuse its commission; and because of its very heinousness, the courts should carefully avoid confusing the voluntary and meretricious gratification of lustful desires upon the part of a woman with the idea of her betrayal by a man. The difference between the two is wide and deep. On the one hand is the harlot, who bargains her person for a price; on the other, the pure and virtuous but deeply wronged woman. In the conviction and punishment of the sexual act, with the one the law looks merely to the suppression of the social evil; in the other, it strikes with a mailed hand and with the double purpose to suppress the evil and to avenge the wrong. The woman whose every maidenly instinct must teach her that the representations made to induce her consent were indeed false, and then upon such representations submits her person to another, could not be a virtuous female in the truest sense, whatever may be the legal significance attached to those words. Such conduct is more compatible with that moral condition which enables her in advance of overtures from the man to herself entertain lascivious desires. It places her where she is more likely than otherwise herself the seducer. She must know that the sexual act is wrong,

and that the bare contemplation of such a thing does violence to every instinct of a maidenly modesty. A virtuous unmarried woman, laboring under no mental disability, must know that any representation made to her by a married man that the act of sexual intercourse was not immoral and would do her no harm was utterly false; it is a representation by which she could not be misled or deceived. Therefore a bare statement by him that it was not wrong, coupled with solicitations to her to consent to the act, would not justify his conviction for seduction. If coupled with that statement, however, he employ other false and fraudulent means, as if by spiritual exhortation or by reason of any peculiar relation existing between them by and through which he exercises a controlling influence over her mind and will, he induce her to consent, he would be guilty of seduction. *Wood* v. *The State*, 48 *Ga.* 192. The indictment in this case does not allege the use of any false or fraudulent means, within the meaning of that term as employed in the statute, by which the consent of this female was induced to the act of sexual intercourse. It alleges persuasion it is true, but this alone, without promise of marriage, will not suffice. It is true she was a young girl—he a mature man, but it is not alleged that there was any special relation existing between them by which over her will he could exercise a controlling influence. His statements were untrue. The opinions he expressed as to whether or not this particular act would be morally wrong are wholly at variance with sound morals and good law, and so manifestly so as not to have amounted to misrepresentations which could be said to be calculated to deceive. Of the fact that he was a married man it is not alleged that she was ignorant. It is a case in which the female simply upon solicitation consented to the act of sexual intercourse, her consent not being induced by any of the false and

fraudulent means contemplated by the statute. We conclude, therefore, that, as charging the offense of seduction, the indictment was bad. Its allegations were inadequate to that charge; but it contains all of the substantive facts constituting a case of adultery and fornication, alleged probably with too minute and unnecessary particularity, but nevertheless stated so that, if proven, a verdict for the latter offense would stand. The evidence is clear and satisfactory to each of the material averments constituting the offense of adultery and fornication. It has been often ruled in this court that an offense is characterized, not by its specific designation in the indictment, but by the criminal acts therein alleged to have been committed. See 3 *Ga.* 417 and 31 *Ga.* 206. While it has been decided in this court that upon an indictment for seduction, the defendant might be convicted of the lesser offense of adultery, or adultery and fornication, or fornication (48 *Ga.* 192 and 54 *Ga.* 389), we do not think that question occurs in this case. This indictment, upon a careful analysis of its allegations, is really an indictment for adultery and fornication, though rather inaptly described as being an indictment for seduction. Had the jury convicted the defendant generally under the indictment in this case, it would have been the duty of the court to have sentenced him as for the offense of adultery and fornication, that being the only offense laid in the indictment. The evidence being clear and satisfactory, and the jury having convicted the defendant of the offense of adultery and fornication, the judgment of the court below denying a new trial will not be disturbed.     *Judgment affirmed.*