505.   DUBLIN & SOUTHWESTERN RAILWAY COMPANY
*v.* AKERMAN & AKERMAN.

1. The name "Akerman & Akerman" connotes a partnership. An amendment alleging that they are a partnership is permissible, though not necessary.
2. An attorney may render services for a person or corporation in a suit to which the client is not a formal party.
3. "The managing officers and agents of corporations have power to employ attorneys to prosecute and defend suits for the corporation, or otherwise to assist in legal proceedings in which it is interested, without any express delegation of power to do so, or any formal resolution of the board of directors to that effect."
4. The evidence in this case demanded the verdict rendered.

Complaint, from city court of Eastman—Judge Thomas presiding. April 9, 1907.

Submitted October 21,—Decided October 30, 1907.

Akerman & Akerman brought suit against the Dublin & Southwestern Railway Company on an account as follows: "To service in the case of Southern Railway Company *v.* Mayor & Council of Eastman et al. in the Circuit Court of the United States for the Southern District of Georgia, $100.00." The defendant demurred, (1) because no party plaintiff is named, it not appearing

that Akerman & Akerman are either a partnership or a corporation; (2) because it appears from the account that defendant is being sued for services in a case to which it does not appear to have been a party. The plaintiff amended, alleging that Akerman & Akerman are a partnership. The demurrer was overruled. Upon the trial the following testimony was introduced by the plaintiff: Judge Clements testified, that in June, 1905, the Southern Railway Company filed a petition in the United States Court against the Mayor & Council of Eastman; and he was representing that defendant. The suit involved the right to a certain strip of land on which the Southern Railway Company was about to lay a sidetrack, and which the city, it seems, was about to give to the Dublin & Southwestern Railway Company for terminal or similar purposes. (The exact nature of this suit is immaterial to this case, except to the extent that the city and the Dublin & Southwestern Ry. Co. had a mutuality of interest.) The answers of the city had been prepared and filed. This witness further testified: "I met Judge Roberts, who had been to Dublin, and he came to me and told me that Col. J. M. Stubbs, who was general counsel for the Dublin & Southwestern, had told him and requested him to see me and get the Akermans in the case. Judge Roberts and myself were local counsel for the Dublin & Southwestern. I went to Macon in three or four days afterwards, and when I got up there I spoke to Mr. Alex Akerman, the older member of the firm, and told him of the message I had received from Col. Stubbs through Judge Roberts. We discussed the case and he told me what he would charge to go into the case. . . Mr. Akerman told me he would charge $100 to go into the case. Before the case was called Col. Stubbs and Mr. Rentz both appeared in the Federal building in Macon, and Mr. Rentz again spoke to me about the employment of Mr. Akerman, or rather he and Col. Stubbs discussed it with me; they were both in the court-room after the case had been started and during a portion of the trial. I told Mr. Rentz what Mr. Akerman said about the fee, and he directed me to employ him for the railroad company, and that the company would pay Mr. Akerman. I immediately did that, and Mr. Akerman went into the case, and Mr. Rentz was in there while the case was being tried and saw Mr. Akerman participating in the case. Before the suit of the Mayor and Council of Eastman

had been disposed of, an amendment was offered by the Southern, asking that the Dublin & Southwestern be made a party also." Judge Roberts testified that Col. Stubbs, the general counsel for the railway company, asked him to tell Judge Clements to employ Akerman & Akerman to represent the railway company's interests in the matter, on account of the special skillfulness of that firm in matters of procedure in the Federal courts. As to Mr. Rentz, who was referred to in the testimony, Judge Roberts testified, "I think Mr. Rentz was president of the Dublin & Southwestern as it then existed; he was supervisor and superintendent of the extension of the road to this place. . . I think Mr. Rentz was the only president the road ever had up until the time it was sold out." Judge James Bishop, who represented the Southern Railway in the suit, testified to the successful fight made by Akerman & Akerman to prevent the Dublin & Southwestern Railway Company from being joined by amendment as party defendant to the suit pending against the City of Eastman. It further appeared, from the testimony of directors of the railway company and others, that Mr. Rentz had referred to this fee at meetings of directors and had said that he would see to its being paid, but that he wanted to hold Akerman & Akerman off and see if he could not get them down on the price. Messrs. Akerman presented their bill to the City of Eastman, and, after the city had declined to pay it, on the ground that the railway company alone was liable, this suit was brought. The defendant introduced no testimony.

*J. P. Highsmith,* for plaintiff in error.

*C. W. Griffin, Tye, Peeples, Bryan & Jordan,* contra.

POWELL, J. (After stating the facts.)

1. The statement in the first headnote is too plain to justify elaboration. *Buffington* v. *State,* 124 *Ga.* 24 (52 S. E. 19); *Smith* v. *Columbia Jewelry Co.,* 114 *Ga.* 698 (40 S. E. 735); *Western & Atlantic R. Co.* v. *Dalton Marble Works,* 122 *Ga.* 776 (50 S. E. 978).

2. The statement in the second headnote seems likewise obvious. Very frequently the most valuable service an attorney can perform for his client is to keep him out of a suit.

3. The third headnote is copied bodily from 10 Cyc. 928 (8b). We are inclined to think that the general counsel or head of the le-

gal department, in a corporation such as this, would have the implied power to employ such special or local attorneys as might be necessary. Certainly the employment of an attorney by the joint authority of the general counsel and the president, who also exercises the duties of superintendent, is to be regarded as the act of the corporation. It is said, in the argument, that there is no evidence of Mr. Rentz's official capacity; that Judge Roberts's testimony to that effect was prefaced by the words "I think." There is no rational distinction between the expressions "I think" and "according to my recollection," as applied to the testimony of a witness as to the existence of a fact which came within his personal knowledge. *Mimbs* v. *State,* ante, 387 (58 S. E. 499); Voisin *v.* Commercial Ins. Co., 60 App. Div. (N. Y.) 499 (70 N. Y. Supp. 147, 154); Humphries *v.* Parker, 52 Me. 502, 504; Galveston Ry. Co. *v.* Parrish, 43 S. W. 536. See the second definition of the verb "think," in the Century Dictionary.

4. The testimony is clear and unequivocal that this debt is due and owing by the defendant to the plaintiff. It is true that there are some exceptions taken in the record, based upon objections to testimony; but should we concede all these objections to be well founded (though indeed they are not), still they relate to immaterial matters, not in any wise changing the only material fact, which is overwhelmingly established and not denied, that this debt is due the plaintiffs; and therefore these exceptions are utterly immaterial. By not a word of testimony does the defendant dispute the debt; the only reason, so far as the record shows, why it has not been paid is indicated by the statement made by the president at the directors' meeting, that he was "holding them off to see if he could not get them down some." After a careful consideration of the record, we have become satisfied that the bringing of the case to this court is but a part of the defendant's plan to "hold off" the plaintiffs; that it was for delay only. Protection to the State as well as the defendants in error demands the awarding of damages in such cases.

*Judgment affirmed, and ten per cent. damages awarded.*