## 1280.  HOLCOMBE v. THE STATE.

1. In an indictment charging the defendant with having used "profane, obscene, and vulgar" language in the presence of females, the word "profane" will be regarded as surplusage, where the language set forth is, as a matter of law, not profane, but is obscene and vulgar.

2. The object of section 396 of the Penal Code, so far as it relates to obscene and vulgar language, is the protection of the modesty of women from unreasonable invasions.

(a) As used in this code section, the phrase "obscene and vulgar language" includes any foul words which would reasonably offend the sense of modesty and decency of the woman, or women, or any of them, in whose presence the words were spoken, under all the circumstances of the case.

(b) Language may be obscene and vulgar within the purview of this code section, although it has no reference to sexual intercourse or the sexual organs.

3. "Words get their point and meaning almost entirely from the time, place, and circumstances, and intent with which they are used;" consequently it is usually issuable, and therefore a question for the jury, as to whether any particular language is actually obscene and vulgar. There are, however, certain words which, by common consent of mankind, are obscene and vulgar, when used in the presence of women, except under exceptional and necessary circumstances. Such words may be said to be prima facie obscene and vulgar.

(a) Any gross reference to a woman's private parts, or to the adjacent portions of her person, is, in this sense, prima facie obscene and vulgar.

(b) Where a minister of the gospel, from the pulpit, in the presence of a mixed audience, aims at a female member of the congregation an indecent jest as to her buttocks, and especially as to the size of them, the language is prima facie obscene and vulgar; and the time, place, and circumstances are such as to exaggerate the indecency, rather than to relieve the words of their ordinary objectionableness; therefore, in such a case, the surroundings being conceded by the defendant, the court may properly instruct the jury that the defendant would be guilty, if, without sufficient provocation, he used the language in the hearing of females.

(c) A written request to charge may be refused, where the same subject is fully and fairly covered in the general charge.

4. There is a general presumption that the ordinary human faculties are possessed by every individual.

(a) In the absence of proof to the contrary the law presumes soundness both as to mental and bodily functions.

(b) A person is presumed to have an ordinary capacity for hearing, in the absence of some reason shown to the contrary.

5. The court erred in refusing a written request to charge the jury that it was necessary for the State to show that the crime was committed in the county of the prosecution; but, under the particular circumstances, it was not reversible error.

6. The testimony of a witness is not to be excluded merely because he prefaces his statement by an expression of unwillingness to commit himself absolutely and positively to the accuracy of what he says. The witness may give his best recollection, the weight of his testimony being left as a matter for the consideration of the jury.

7. Matters without prima facie relevancy may become relevant, by being interwoven into a conversation which is relevant and admissible.

8. A witness, though not an expert, may testify as to his judgment whether a person was within hearing distance of a remark made by another.

9. The defendant was clearly guilty; and the record presents no reversible error.

Accusation of misdemeanor, from city **court** of Cartersville— Judge Foute. July 3, 1908.

*John T. Norris*, for plaintiff in error.

*Thomas C. Milner*, contra.

Indictment for misdemeanor, from city court of Cartersville— Judge Foute. July 3, 1908.

Argued October 5,—Decided October 26, 1908.

The defendant and other ministers had been carrying on a series of revival services in what is known as "the tabernacle," in Cartersville. On the concluding day, which was Sunday, a large number of people were in attendance. Services were held at eleven o'clock in the morning, and it was announced that early in the afternoon (either at 2:30 or 3 o'clock) a preacher named Oliver would deliver a lecture "to men only." The day was rainy. Many of the people had come from the country and even from surrounding counties, and a large number of women either remained in the building or sought shelter there from the rain; so that when the time arrived for the lecture "to men only" the audience was mixed. It is conceded that more than 2,500 persons were present. The defendant himself estimated the audience as between 2,500 and 3,000 in number. The defendant, when the time arrived for the lecture to begin, asked the ladies to retire. On account of the rain they were slow in leaving, and a considerable number, variously estimated, remained. It seems that in the audience there was a large woman with her back to the rostrum. The defendant, upon being requested by the other preacher to get the ladies out, advanced to the front of the platform, and, in the presence of the congregation, said, as the State charged and the witnesses for the prosecution testified, "You woman with the big fat rump pointed towards me, get out of the way." The

language, according to the defendant's statement, was: "Gentlemen, there is a big old woman weighing about 400 pounds with her rump turned this way. If she would turn around and let me speak to her head, I might explain to her the object of this meeting, and we might go on." He was indicted and convicted for violating section 396 of the Penal Code, which provides that "any person who shall without provocation . . use obscene and vulgar or profane language in the presence of a female . . shall be guilty of a misdemeanor." Exceptions are taken to the overruling of a demurrer to the indictment, and also the overruling of a motion for a new trial. Further facts necessary to the understanding of the points presented and decided will be stated in the course of the opinion.

*John T. Norris,* for plaintiff in error.

*Thomas C. Milner, solicitor,* contra.

POWELL, J. (After stating the foregoing facts.) The indictment charged that the defendant did, without provocation, use, in the presence of females, whose names are to the grand-jurors unknown, the following profane, vulgar, and obscene language: "You woman with the big fat rump pointed towards us, get out of the way." The defendant demurred, because the language was not profane; also because it was not obscene and vulgar. The language was not profane, and therefore the use of that word in the indictment was pure surplusage. "Defective allegations do not impair an indictment if, on their being rejected, what remains fully covers the law." Bishop's New Crim. Proc. §480. The word "profane," as used, is merely epithetic of the general nature of the offense, and does not fall within the rule that where the facts of the transaction are alleged with needless particularity, the unnecessary allegations can not be rejected as surplusage. *Disharoon* v. *State,* 95 *Ga.* 356 (22 S. E. 698).

2. The language charged was, in our judgment, clearly obscene and vulgar, within the purview of section 396 of the Penal Code. As was said in *Dillard* v. *State,* 41 *Ga.* 280, "This statute does not stand upon the footing of statutes against public indecency. Its object is not to keep pure the public morals. It is to be found in that chapter of the Code which punishes private wrongs, and forms a part of the same clause which makes it a penal offense to use opprobrious and abusive language to another.

It is intended to protect females from insult; to furnish to the friends of a female whose modesty has been unlawfully shocked, or whose feelings have been wounded, by the use in her presence of obscene and vulgar language, some other remedy than that which nature dictates, to wit, club law. And the statute is to be construed and understood in the light of its object." We can not adopt the suggestion of counsel that it is aimed alone at language suggestive of sexual intercourse, or tending to excite lewdness or to debauch the public morals. The word "obscene" means "offensive to the senses, repulsive, disgusting, foul, filthy, offensive to modesty or decency, impure, unchaste, indecent, lewd." Century Dictionary. We think that the phrase "obscene and vulgar language," as used in the statute, includes any foul words which would reasonably offend the sense of modesty and decency of the woman or women, or any of them, in whose presence the words were spoken, under all the circumstances of the case. It would be absurd to tolerate the suggestion that to speak of a woman's rump in a loose or jocular connection would not be offensive to the modesty and decency of the ordinary woman. As a matter of common knowledge, we know that such language would shock any decent and modest woman. In other statutes, having different objects from the one before us, the word "obscene" may not be entitled to so broad a signification. In the Federal statute (Revised Statutes, § 3893, U. S. Comp. St. 1901, p. 2658), by reason of its association in immediate context with the words "lewd or lascivious," it partakes of their meaning, and is therefore itself limited to less than its ordinary significance. Hence the many decisions of the Federal courts on this statute, which counsel for the plaintiff in error cites, give us no light on the question at bar. Ours is a statute adapted to the temperament of the people of this State. It is to be understood in the light of our well-known sensibilities on certain subjects. Modesty, that "kind of quick and delicate feeling in the soul, the exquisite sensibility that warns a woman to shun the first appearance of everything hurtful," is, according to the mind of the average citizen of Georgia, as needful and legitimate a subject-matter of protection from invasions as those more familiar subjects of protection through the criminal statutes,—life, liberty, and property.

Of course, language tending to incite illicit sexual intercourse

is obscene and vulgar; and in most of the reported cases in this State (where the words were not profane, so as to fall within the other portion of the statute) the prosecutions were for using words suggestive of sexual intercourse; but it does not follow that no other language is obscene and vulgar. Indeed, in *Brady's* case, 48 *Ga.* 311, the language is characterized as being "quite obscene and vulgar enough to shock the moral sensibilities of all sensible people." The language in that case was not reported, but an inspection of the copy of the original indictment, contained in the record in the Supreme Court, discloses that it was in no wise suggestive of lewdness or sexual intercourse. The objectionable language there was a threat to kick the same portion of a woman's · anatomy as that which is the subject-matter of the present inquiry. Any one doubting that the language of the present indictment is within the meaning of the words "obscene and vulgar," as commonly and ordinarily understood, may easily solve that doubt by quoting the language to his different male acquaintances, as he meets them in the varying stations of life, and asking them if they would consider it obscene and vulgar to use that language in the presence of ladies:

3. In his charge to the jury the court did not submit the question as to whether the language was obscene and vulgar, but in effect instructed that if the language, substantially as alleged, was used by the defendant in the presence of the females, without provocation, the defendant would be guilty. Under the circumstances this was not error. "Words get their point and meaning almost entirely from the time, place, circumstances, and intent with which they are used" (*Dillard* case, supra) ; and, therefore, usually it is issuable, and consequently a question of fact for the jury, as to whether the particular language is actually 'obscene and vulgar. Certain suggestions are commonly known to be indecent; certain words are per se obscene and vulgar, if used under any but peculiar and exceptional circumstances. *Dillard's* case, supra; *Pierce* v. *State*, 53 *Ga.* 369; *Kelly* v. *State*, 126 *Ga.* 548 (55 S. E. 482). Any gross reference to the private parts of a woman, or to any of the surrounding portions of her person, is, by common consent of mankind, indecent and shocking to feminine modesty. Such a reference might, however, be made in the presence of a female, and not be per se criminal—for instance, in a brothel. But where

the language is gross and prima facie indecent, and such that common consent condemns it as unfit, by reason of its obscenity, to be used in the presence of women,—that is, if it is so universally recognized to be obscene and vulgar that the court can assume its prima facie obscenity and vulgarity, through judicial cognizance as a matter of common knowledge,—and the conceded time, place, circumstances, and intent are such as to show no reason making or tending to make its use on the particular occasion less obscene and vulgar than it normally would be, there is no issue as to the obscene and vulgar quality, to be submitted to the jury. There is no conflict between this principle and those cases holding that whether particular language is opprobrious and likely to cause a breach of the peace is for the jury; because what effect particular language will have upon a person under particular, or even ordinary, circumstances, is almost always, if not always, an issuable question, and, in the nature of things, can not well become a matter of common knowledge, so as to be judicially assumed. In the present case the reference, whether we take the State's version or the statement of the defendant himself, was gross. The language was prima facie obscene and vulgar; in form and in substance the allusion was indecent. The time, the place, and the circumstances, instead of making or tending to make its use on the particular occasion less likely to offend the modesty of any woman who might hear it than normally it would be, tended distinctly to the contrary. It was not the ribaldry of some low-grade comedian, in some second-class theater; it was the indecent jest of a minister of the gospel, made in a house devoted to the service of God, in the presence of some three thousand worshippers, aimed at a female member of the congregation, whose excess of adipose upon an unmentionable part of her person happened to excite his attention. His own statement concedes every element of this characterization, except that the words of his jest were indecent; and as to that we have decided against him. We do not say that even a minister in the pulpit is precluded at all times and under all circumstances from making reference to things which are not usual subjects of conversation in polite society, if he couches his language in an inoffensive context (though, even as to these things, decency commands that he should be extremely cautious in the choice of his language), and we recognize that real

modesty, and not prudery, and not pruriency, is the object of the law's protection; but we do say unequivocally that an indecent jest, couched in language ordinarily considered obscene and vulgar, is never permissible from the sacred desk, and that if it be made in the presence of females it is a criminal act. Our women certainly have a right to come to our places of religious worship without fear of shock or insult by reason of indecent language used by the minister in charge.

The exception to the court's refusal of a written request to charge the jury that it was incumbent on the State to show that the language was used without provocation is not well founded. We find that the judge clearly covered this in his general charge, in several places. He did not elaborate the question of provocation; it was not necessary that he should do so. Both sides had been fully heard as to all the circumstances, and no semblance of provocation appeared. Provocation, as used in this statute, means sufficient provocation. *Ray* v. *State,* 113 *Ga.* 1066 (39 S. E. 408); *Ratteree* v. *State,* 78 *Ga.* 335; *Dyer* v. *State,* 99 *Ga.* 22 (25 S. E. 609, 59 S. E. 228); *Brady* v. *State,* 48 *Ga.* 311. It seems that when the State makes a prima facie case, the burden shifts to the defendant to show provocation. *Pierce* v. *State,* 53 *Ga.* 365.

4. When the evidence on both sides of the case had been fully heard, about the only question as to which there was any material issue under the proof was whether the language was used in the presence of females. It was not denied that women were present in the building, but the defendant insisted that they were not within hearing distance of his remark. The phrase "in the presence of a female," as used in this statute, means "within range of the female's hearing." *Brady* v. *State,* supra; *Sailors* v. *State,* 108 *Ga.* 35 (33 S. E. 813); Henderson *v.* State, 63 Ala. 193; Laney *v.* State, 105 Ala. 105 (17 So. 107). On this question the court charged, that if any females were present on the occasion in question, the presumption would be that their hearing was ordinarily good, and that they could have heard and did hear any language spoken loud enough to have been heard by any person of ordinary hearing capacity. The plaintiff in error excepts to this instruction, on the ground that there is no such presumption. We find no error in this charge. There is a general pre-

sumption that the ordinary human faculties are possessed by every individual. *Davis* v. *R. Co.,* 60 *Ga.* 333. In *Gardner* v. *State,* 81 *Ga.* 144 (7 S. E. 144), •the following charge was approved: "The law presumes sanity both as to mental and bodily functions."

5. The court was duly requested to charge the jury that the burden was upon the State to show that the crime was committed in Bartow county. He neglected to give this instruction. This was error, of course. However, we deem it too harmless and immaterial in the present instance to work a reversal. There was clear, direct proof that the crime was committed in Bartow county; there was not the slightest suggestion to the contrary; the place of the commission was nowise doubtful or uncertain, and only in a very limited sense can be said to have been issuable. In the light of the nature of the proof, the requested charge, if given, could not, would not, and should not have benefited him at all.

6. Exception is taken to the fact that the court erred in receiving the testimony of Judge Fite, who was sworn as a witness for the prosecution, because he prefaced his account of the transaction with the following language: "If I have any best recollection about it, the substance of it was about this—but I am not sure I recollect it—it may be that I talked to others about it—did talk in the committee room, a meeting of the trustees—and I might have gathered some from that." The trial judge instructed the witness merely to give his best recollection. It appeared that the witness was present at the services when the obscene and vulgar language was used. His hesitancy went only to the giving of exact words. His unwillingness to swear absolutely and unequivocally did not render his testimony inadmissible, and was merely a part of the witness's "manner of testifying," which, under the Civil Code, §5146, was to be considered by the jury along with all the facts and circumstances of the case. *Mimbs* v. *State,* 2 *Ga. App.* 387 (58 S. E. 499); *Dublin Ry. Co.* v. *Akerman,* 2 *Ga. App.* 749 (59 S. E. 10). See also 5 Enc. Ev. 666.

7. Another ground of error is that while Judge Fite was testifying, the court permitted him to state that he and others told the defendant that his language was obscene and vulgar. When we examine the whole context, we find nothing erroneous in this ruling. The defendant had stated, on the trial, that his remark

was not addressed to the woman in question, that he had used the language innocently and as a mere side remark for the hearing only of the men near him, that he used the word "rump" because he was thinking of the word "hump," and the word "rump" rhymed with it. To rebut this explanation Judge Fite was called as a witness. He testified that on the next day after the language was used, the defendant was called before a committee of the trustees of the tabernacle, and told that offense had been taken on account of his statement, and that he ought to make an apology, to which the defendant stated that he declined to apologize, as he thought that he had a right to say what he did; Judge Fite then said to him that the language, as he considered it, was vulgar and obscene; the defendant replied that he didn't think so, and said, in this connection, "That's the way I have got of moving them, and I move them." By this and the further details of the conversation, as narrated in this testimony, it was made to appear that the defendant did not deny that he used the language, or that he intended for the woman to hear it, but sought to justify his conduct, on the ground that it was his usual way of moving recalcitrant female members of his congregation. It will be seen, therefore, that as a part of the res gestæ of the conversation, the statement objected to was admissible.

8. There is another exception to a ruling in the admission of testimony. The solicitor-general asked a witness: "In what tone was that said, loud enough to have been heard by these women?" The witness answered: "I think he said it for them to hear it." If this were construed as an opinion of the witness as to what the defendant's intention was, the answer would probably be subject to objection. It seems, however, that it was construed by court and counsel, not as an opinion as to the defendant's intention, but as to whether the words were spoken loud enough to be heard by the women; for the exception states that there was error because the court allowed this witness and others "to testify as to whether or not, in their opinion, the alleged remark was, or could have been, heard by women alleged to have been present." The answer, though apparently opinionative in form, was competent. "A fact of observation depending on minutiæ such as can not be described to the jury with the same effect as they justly produce in the mind of an intelligent observer may be proved by the tes-

timony of the witness directly to the conclusion formed from such minutiæ, provided that conclusion is not mere matter of opinion deduced from facts observed, but is itself a fact discerned by the witness in the act of observation, though it may be in part by the exercise of judgment. This rule allows a witness to state the result of a comparison, without being confined to describing his observation of each thing compared." Abbott's Trial Briefs (Mode of Proving Facts), (2d ed.) 508. "A witness may testify as to whether or not a person was within hearing distance of another." 5 Enc. Ev. 694; *Atlanta Ry. Co.* v. *Beauchamp,* 93 *Ga.* 6 (19 S. E. 24). "On a trial under an indictment charging the defendant with using abusive, insulting, or obscene language in the presence of a woman, it is competent for the witness who was present and heard the language to testify that in his judgment the woman was near enough to hear the language, or in his judgment the language used by the defendant could have been heard by the woman in question." Such statements of "collective facts" are not conclusions merely, and are admissible in evidence. Rollings *v.* State, 136 Ala. 126 (34 S. E. 339); McVay *v.* State, 100 Ala. 110 (14 So. 862).

9. The foregoing rulings will cover other points presented in the record, and not expressly decided. The evidence fully supported the verdict; the defendant was clearly guilty, and the trial was free from material error.

*Judgment affirmed. Russell, J., dissents.*