## COLEMAN *et al. v.* GEORGE, Judge.

1. The court did not err in this case in construing the petition for a change of venue to be based solely on the ground that an impartial jury could not be obtained in the county in which the crime is alleged to have been committed.

2. The court correctly held that the provision in the act approved August 21, 1911, relating to a change of venue in criminal cases, providing for a direct bill of exceptions which should "operate as a supersedeas in the trial of said case," is not applicable in case of the denial of a petition for a change of venue, where the same is based solely upon the ground that an impartial jury can not be obtained in the county where the crime is alleged to have been committed.

SEPTEMBER 27, 1913.

Application for mandamus to require Judge George to certify a bill of exceptions.

*Haygood & Cutts, John R. Cooper,* and *D. B. Nicholson,* for movant.

BECK, J. The following petition was presented to the judge of the superior court of Wilcox county:

"The petition of W. A. Coleman, Jim Coleman, and W. H. Stephens, citizens of the county of Wilcox and State of Georgia, and who are now detained in the common jail of Wilcox county, Georgia, respectfully shows to this honorable court:

"1. That they have been indicted in the superior court of Wilcox county for murder, in that they did on the 6th day of April, 1913, kill Leon Melvin.

"2. Your petitioners respectfully show that when they were arrested and put in jail in Abbeville, said county of Wilcox, it was necessary, in order to secure the safety of the said W. A. Coleman from the mob, to carry him to the common jail of Ben Hill county, Fitzgerald, Georgia, where he remained for some time. Afterwards he was removed back to the jail of Wilcox county and remained there a short while, and the mob stormed the jail and tried to get him out of jail in order to lynch him. The mob cut the telephone wire, and the said mob was only prevented from getting Coleman by the wife of the jailer who got the keys and kept them under her apron.

"3. After this storming of the jail by the mob, W. A. Coleman was carried by the sheriff of Wilcox county to the common jail of Dooly county, Vienna, Georgia, for safe-keeping, and there he re-

mained for some time, a month or so, and was only carried back to Abbeville jail a few weeks ago.

"4. Your petitioners further allege that since their incarceration they have heard of numerous threats against their lives, and that while W. A. Coleman was incarcerated in prison his hands were run off his farm and some of them beaten and warned that if they did not leave the farm they would be dealt with by violence, and that it was necessary for him to employ more men to take their places and run his farm this year. Your petitioners aver that on account of the great feeling and prejudice against him in said county it was very hard for him to get his land cultivated this year; and that great damage has been done to him on account of the prejudice existing in the county where the homicide occurred.

"5. Your petitioners show that on account of the excitement and common feeling that existed after the homicide, which was calculated to poison the minds of the jurors, and further that a large portion of the jurors of said county have formed and expressed an opinion in regard to their guilt, either from having heard some part of the evidence at the coroner's trial or from having heard statements of others and from certain evil-disposed persons, relatives and friends of the deceased, who circulated rumors exceedingly damaging to them and prejudicial to a correct termination of the issues involved in the case, that the public mind has been so poisoned and prejudiced by exaggerated rumors in the newspapers of the State that the defendants do not believe that they can get a fair trial by an impartial jury in Wilcox county, Georgia, the sort of trial that they are entitled to under the constitution and laws of the United States.

"Wherefore, they respectfully ask this honorable court to change the venue in said case, and that they be ordered tried upon said bill of indictment in some other county in the circuit and in the State of Georgia other than the county of Wilcox."

After hearing the evidence and argument of counsel upon this petition, the judge overruled it. Thereupon the petitioners presented their bill of exceptions to the judge for his signature, seeking to bring the ruling directly to this court for review. The judge refused to certify the bill of exceptions, and held that the petition was based upon the law in regard to the change of venue in criminal cases as it stood before the passage of the act approved August

21, 1911 (Acts 1911, p. 74), relating to a change of venue in criminal cases. Prior to that act the law provided for a change of venue only in cases where an impartial jury could not be obtained in the county where the crime was committed. The judge below in this case held further that the act of 1911 provided an additional ground for a change of venue in criminal cases; and that when the additional ground provided in that act is embraced in the motion, a movant has the right to a direct bill of exceptions in case the judge should refuse to grant the motion; but that where the motion is based solely upon the ground that an impartial jury can not be obtained, a denial of the motion is a proper matter for exceptions pendente lite, and not for a direct bill of exceptions.

We are of the opinion that the judge below properly construed the petition in holding that it was based solely upon the ground that an impartial jury could not be obtained in the county where the crime was alleged to have been committed. While the petition does allege certain attempted acts of mob violence in the past against one of these petitioners for a change of venue, there is no allegation that at present there is an existing danger of a lynching of this party against whom the attempts were made or against either of the other petitioners; nor that there have been so recently threats of violence or attempts to lynch either W. A. Coleman, the petitioner against whom the former attempts were made, or against either of the other petitioners, as to show that there is a probability or danger of lynching or other mob violence at the present time, or that there was at the time of filing and hearing the motion a present existing danger or probability of such violence. But the petition distinctly alleges that on account of the excitement and feeling that existed "after the homicide, which was calculated to poison the minds of jurors," and from the fact that a large part of the jurors of the county had formed and expressed an opinion in regard to the guilt of the petitioners, and for other reasons set forth in the petition, the defendants "do not believe that they can get a fair trial by an impartial jury in Wilcox county" (the county in which the crime is alleged to have been committed). The petition, properly construed, rests the case for a change of venue upon the law granting such a change where an impartial jury could not be obtained. That being true, the court did not err in holding that the denial of the motion was a proper matter for exceptions

pendente lite, and not of a direct bill of exceptions to this court. The act of 1911 does not change the law relating to a change of venue in criminal cases as it existed prior to that act and as it is declared in section 694 of the Penal Code. This section is amended, not by changing the provisions as they stood at the time of the amending act, but by adding another ground upon which a change of venue may be had; and the addition makes it lawful for the judge of the superior court to change the venue "on his own motion, with or without petition, whenever, in his judgment, the accused party will be lynched, or there is danger of violence being attempted to be committed on said accused, if carried back, or allowed to remain, in the county where the crime is alleged to have been committed. And if a motion by petition shall be made by the accused for a change of venue, said judge shall hear the same at chambers, with or without the presence of the accused, at such time and place in the State as he may direct. And if the evidence submitted shall reasonably show that there is probability or danger of lynching, or other violence, then it shall be mandatory on said judge to change the venue to such county in the State as, in his judgment, will avoid such lynching. The petitioner shall have the right to except to the ruling of the court at such interlocutory hearing, and the bill of exceptions when signed shall operate as a supersedeas in the trial of said case, until passed on by the Supreme Court." The provision in this amendment, declaring that "the petitioner shall have the right to except to the ruling of the court at such interlocutory hearing, and the bill of exceptions when signed shall operate as a supersedeas in the trial of said case, until passed on by the Supreme Court," is applicable, in our opinion, only where a motion is made based upon the existence of danger or probability of a lynching or other mob violence. While the provision for a direct bill of exceptions to the ruling of the court at an interlocutory hearing is by the amendment placed in the same section of the code with the law as it stood prior to the passage of the amending act, we do not think that it should be made applicable to the law providing for a change of venue on the ground that an impartial jury can not be obtained; but it should only be applied in cases of motions based upon the ground for a change of venue added by the amendment. We are induced to adopt this construction as the correct one from a consideration of the con-

text, and of the reason for the amendment which must have existed in the minds of the legislature when it enacted the amendment. The law giving the right to a change of venue on the ground that an impartial jury could not be obtained in the county where the crime was committed stood for many years as it is in the present Penal Code, and no right to a direct bill of exceptions to a judgment of a court refusing to make a change of venue upon motion existed. A refusal to grant the motion under the law was treated as rulings upon other incidental or preliminary issues and matters in the trial of criminal cases; such as motions for continuance, pleas in abatement, demurrers, etc. The accused, in cases of adverse rulings, could not as a matter of right, in such matters, have a direct bill of exceptions to this court which would operate as a supersedeas and prevent further proceedings in the cause until the question made in such bill of exceptions was disposed of here. And the mere fact that the legislature has seen fit to create an additional ground for a change of venue, and give in connection therewith a right to a direct bill of exceptions which should operate as a supersedeas in the trial of a case, and that the statute creating the additional ground has been placed in the same section of the Penal Code with the former legislative declaration upon that subject, does not justify a construction making the provisions in regard to procedure applicable to the provisions which existed formerly, unless the context or the reasons for making the additional ground for a change of venue require it. As we have said, and as will be seen upon reading the amendatory act, the context does not show that the provision for a direct bill of exceptions in the amendatory act is applicable to the law as it existed prior to the amendment. Nor are there any valid grounds for holding that there was a legislative intent that the provisions now under consideration should be made applicable to the law as it stood prior to the amendment. While there were strong and obvious reasons for making such a provision applicable in cases where there was a motion for a change of venue on the ground that there was a probability or danger of lynching or other violence committed on the accused, errors in rulings upon such preliminary questions or matters as continuances, demurrers, pleas in abatement, etc., could be corrected after trial as well as before trial. Of course, if there was error in ruling upon preliminary matters, requiring the grant of a

new trial in this court, the cost of another trial would be incurred because of such ruling. But we are not prepared to hold that the cost of an additional trial is an evil equal to or greater than that of the delay in the trial of criminal cases, were one who is accused of a crime permitted to suspend the proceedings in the case by suing out, to adverse rulings upon preliminary questions, a direct bill of exceptions to this court, which should operate as a supersedeas until the same was considered here and the questions raised in it adjudicated on review. And without some plain expression of legislative intent to give to the defendant in a criminal case the right, in a matter of procedure, to test the correctness of adverse rulings of the trial court by a direct bill of exceptions, thereby bringing about delay in the trial of the case, this court should not confer the right by construction. The language of the amending act which we have now under consideration requires that where there is a probability or danger of lynching or other violence, "it shall be mandatory on said judge to change the venue to such county in the State as, in his judgment, will avoid such lynching." This provision, that a change of venue under the circumstances last recited is mandatory, making it the imperative duty of the trial court to grant a change of venue when those circumstances are shown to exist, clearly has no application to a petition for a change of venue on the ground that an impartial jury can not be obtained. It makes prominent in the act of the legislative command that there must be a change of venue where there is danger or probability of lynching. It lays emphasis upon the necessity for a change of venue to prevent mob violence; and in immediate connection with this expression giving emphasis to that legislative command is the provision for a direct bill of exceptions to an adverse ruling of the court, which exceptions shall operate as a supersedeas in the trial of the case. The obvious reason for giving additional rights in the matter of procedure where a petition was based upon the ground of danger of lynching was no doubt present in the legislative mind in enacting the statute of 1911; and that was, that an error in passing upon a petition based upon this ground had to be corrected before trial, or it could not be corrected. If a court should erroneously deny a motion based upon the ground that there was a probability of a lynching, and that probability should eventuate in certainty, no reviewing court could

then correct the error. There were no such considerations as these to move the legislative body to grant the right of a direct bill of exceptions, and a suspension of further proceedings in the case, where the motion was based upon the ground contained in the law prior to the act of 1911; and we do not find in the act itself, in the context of the provision that we have immediately under consideration, anything to indicate a legislative intent to change the procedure in any case, except where a motion is made in view of an existing danger of lynching.

*Mandamus denied. All the Justices concur.*