### 5873. BOYETT *v.* THE STATE.

The evidence was amply sufficient to warrant a conviction of seduction. The jury were authorized to find that the female was a virtuous un-married woman at the time she yielded to the embraces of the defend-ant, and that she was induced to yield by persuasion and promises of marriage. There is no substantial merit in any of the assignments of error, and it appears from the record that the accused had a fair and impartial trial. The judgment overruling the motion for a new trial must therefore be affirmed.

DECIDED MARCH 23, 1915.

Indictment for seduction; from Berrien superior court—Judge Thomas. June 27, 1914.

*R. A. Hendricks, E. K. Wilcox,* for plaintiff in error.
*J. A. Wilkes, solicitor-general,* contra.

WADE, J. The defendant was convicted of seduction, and excepts to the overruling of his motion for a new trial, based on the usual general grounds and on several special grounds. Each of the special grounds of the motion for a new trial is hereafter men-tioned and discussed in its proper order. The defendant relies on the contention that the evidence as a whole shows that the sexual commerce between the accused and the woman alleged to have been seduced was entirely meretricious, and therefore that the verdict for seduction is not supported by the evidence. The special grounds of the motion for a new trial are hereinafter first discussed, and the general grounds referred to lastly.

1. The court did not err in allowing the solicitor-general to ask, on cross-examination, the question set out in the first special ground of the motion for a new trial. One of the purposes intended to be subserved in the trial of a criminal case by a thorough and sifting cross-examination is to ascertain the existence of any prej-udice or bias on the part of the witness for or against the accused,

the prosecutor, or any other person connected with the case or participating in the prosecution or defense, or to determine whether the witness might be biased or prejudiced generally for or against persons accused of the particular crime with the commission of which the defendant is charged. Any questions tending to make clear the point of view or attitude of a witness as to the gravity or unimportance of the offense under investigation, if the same are proper and germane and tend to elucidate the feelings or bias of the witness, may affect his credibility and should be permitted, since the right of cross-examination should not be abridged. Penal Code, § 1044.

2. "When a witness, offered for the purpose of proving that a female who is alleged to have been seduced was not virtuous prior to the alleged seduction, declined to answer certain pertinent questions, on the ground that so doing would incriminate himself, the whole of his testimony upon the subject should have been ruled out." *Hays* v. *State,* ante, 20 (84 S. E. 497), and cases there cited. There was no error in the refusal by the court to permit a witness to answer questions seeking to elicit from him that he knew that the woman who claimed to have been seduced had "sexual intercourse with a man" in a certain month and year named. Any conclusion of the witness was incompetent as evidence, and he was properly confined to the statement of such facts as he personally knew, tending to establish that she was not a chaste woman. The witness could have stated that he had seen her in the sexual act at a time and place mentioned by him, and with a man known or unknown to him; and this would have afforded the State an opportunity to elicit all the surrounding facts by cross-examination, and the female an opportunity to specifically deny that she had sexual intercourse at the time and place mentioned, or with the person described or named by the witness. To allow a witness for the defense, in a prosecution for seduction, to state merely that he knew of his own knowledge that the woman alleged to have been seduced by the defendant had prior to the time of the alleged seduction engaged in sexual intercourse with a man other than the defendant, without stating specifically, as nearly as possible, the time and place, and describing or naming the man with whom she had such intercourse, would make it practically impossible for the female whose chastity is under investigation to successfully refute

the charge, and would open the way for unscrupulous evidence in behalf of the defendant. If the witness who testified to acts of unchastity on the part of the woman should decline to name the man who participated with her in such acts, on the ground that he would thereby incriminate himself, his entire testimony should be excluded, under the ruling in the *Hays* case, supra; and therefore such a witness can not be allowed to answer a question that would elicit from him the same damaging testimony, without stating any facts upon which he bases his conclusion, and without naming or describing the man with whom the woman indulged in lascivious conduct or sexual intercourse, and thus evade the exclusion of his testimony.

3. The court did not err in allowing the female alleged to have been seduced, when recalled as a witness for the State, to testify further concerning the courtship between herself and the defendant, and as to his conduct prior to and at the time of the alleged seduction. The matter was within the sound discretion of the judge, and his discretion does not appear to have been abused. Besides, this evidence tended to rebut the statement of the accused that he was not guilty and had "never had anything to do with her in that way," and "never went with her but a few times;" as she testified that he repeatedly declared his love for her and on several occasions used endearing terms to her, and this tended to contradict his statement that he had never had intercourse with her, and showed at least the close intimacy existing between them.

4. A witness introduced for the defense, who, it was shown, had, for a considerable period prior to the alleged time of the seduction, visited the woman alleged to have been seduced, was asked whether or not he had ever had sexual intercourse with her, and refused to answer, on the ground that his evidence might tend to incriminate himself; and in the motion for a new trial it is contended that the court erred in refusing to allow the defendant's counsel to argue to the jury that this was a circumstance to show that the woman was not virtuous at the time she claimed to have been seduced. In principle the ruling in the *Hays* case, supra, covers this exception. If the testimony of a witness should be rejected because he declines to answer in full on the ground that he would thereby incriminate himself, it follows as a necessary conclusion that counsel can not be permitted to present,

by argument to the jury, inferences and deductions based on the refusal of the witness to answer, for such a reason stated by him.

5. The statement in the alleged newly discovered testimony of the physician who attended the woman who claimed she had been seduced, and delivered her of a child, that "in his opinion, from the size and general development of said child, it was an eight months fœtus," though it would tend to refute the statement of the mother that she was seduced in July, 1913, less than seven months before the child was born dead, would not itself be so conclusive as probably to bring about a different result on another trial, as it only purports to be a mere opinion, which the jury would be at liberty to reject (*Griffin* v. *State,* 15 *Ga. App.* 520, 529 (83 S. E. 891, 895) ; and therefore this evidence, whether cumulative or not, and without considering the degree of diligence exercised in obtaining it, is not sufficient to warrant a holding that the trial judge abused his discretion in refusing a new trial on that ground.

6. The evidence disclosed that a bona fide engagement to marry existed between the defendant and the girl he was charged with seducing; that he became acquainted with her in March, 1913, and frequently visited her and took her out buggy riding, until they became engaged in the following June; that he continued to visit her and take her out driving practically every Sunday, until he accomplished her ruin in July following; that thereafter he still visited her and had intercourse with her, until the engagement was broken in the following September; that he used endearing terms to the girl after they became engaged and assured her of his love, and finally persuaded her, relying on his previous promise of marriage, to yield to his carnal desires. He told her at the time he first had intercourse with her that if she did not do as he desired, he would not marry her, but if she did, he would. Nevertheless, it does not appear from the evidence as a whole, or from the fact that there was a bona fide pre-existing engagement or promise to marry, that the consent of the female was based upon the promise of marriage as a consideration moving her to permit the sexual act; and therefore the transaction was not purely meretricious. *Disharoon* v. *State,* 95 *Ga.* 351 (22 S. E. 698). "The sexual intercourse was accomplished not so much because of the promise of marriage, but on account of the confidence which had been created

by reason of the protestations of affection, antedating the engagement to marry" (*Pough* v. *State, 7 Ga. App.* 610, 67 S. E. 695), and following that engagement up to the time of her seduction. "A promise to marry which a woman believes to be made in good faith," and made as a climax to persistent and ardent wooing, "when the man has fully captured the heart of the woman, and she hearkens to the voice of love and yields to her lover because she trusts him, implies persuasion of the strongest character." *Woodard* v. *State, 5 Ga. App.* 447, 451 (63 S. E. 573). The existence of the engagement to marry would argue that the affections of the woman were involved and that her confidence had been won; and she testified that the defendant repeatedly assured her of his love. "To accomplish sexual intercourse with a virtuous woman, pending a virtuous engagement to marry her, may be seduction, though consent be obtained without other persuasion than that which is implied (considering the past courtship and the present relation of the parties) in proposing the intercourse and repeating the promise of marriage." *Wilson* v. *State, 58 Ga.* 329. See also *Cherry* v. *State, 112 Ga.* 871 (38 S. E. 341); *O'Neill* v. *State, 85 Ga.* 408 (11 S. E. 857); *Keller* v. *State, 102 Ga.* 513 (31 S. E. 92).        *Judgment affirmed. Broyles, J., not presiding.*