·12698, 12699.   RUFFIN *v.* THE STATE.

1. Where the venue of a criminal case is changed, the county from which the case is transferred loses, at the time of the change, all jurisdiction to try the accused, either upon the transferred indictment or upon any other indictment charging the same offense; but the power of the court from which the case is thus transferred, to compel obedience to its judgment so changing the venue, is neither lost nor impaired.

2. Where a change of venue is ordered upon an indictment charging the accused with the murder of a named person, and he is subsequently indicted by the grand jury of the same county for the murder of a different person, and thereupon petitions the judge of the court to which the first case was transferred to order a like transfer of the subsequent indictment, contending that the two indictments charge the same offense, the judge of that court does not err in directing the petitioner to proceed before the court or the judge of the court in which the subsequent indictment is of file, and in refusing to assume jurisdiction over the subject-matter of the petition himself.

3. Upon an application for a change of venue or for an order to compel

obedience to a prior judgment granting such change, the merits of the charge laid in the bill of indictment are not in issue. Such a proceeding cannot, therefore, be substituted for a plea of autrefois acquit. Issues properly raised by such petitions are for decision by the judge, without the intervention of a jury, while the merits of the criminal offense charged are for determination by a jury.

4. A judge of a superior court in which an indictment is pending, who, either upon a petition or upon his own motion and without hearing any sworn testimony, orders a change of the venue of the case to another county, in order to avoid mob violence or the danger thereof, does not err therein, if, in his judgment, as derived from personal familiarity with local conditions, the accused person would be lynched, or there would be danger of an attempt to commit violence upon him should he be brought back to or allowed to remain in the county in which the crime is alleged to have been committed.

5. Where an indictment is thus transferred from the superior court of one county to the superior court of another county, if an impartial jury cannot be obtained to try the case in the latter county, or if similar danger of mob violence is found to exist there, all the remedies afforded by law for a change of venue are open, both to the accused and to the judge of the latter court, for a second change of venue, as fully and completely as in the first instance, and as fully as if the case had originated in the county to which it was thus transferred.

DECIDED DECEMBER 30, 1921.

Change of venue; from Chatham superior court — Judge Meldrim. March 26, 1921.

*Archibald Blackshear, Lawrence & Abrahams,* for plaintiff in error.

*A. S. Anderson, solicitor-general, T. L. Hill,* contra.

LUKE, J. At the September term, 1919, of Jenkins superior court the grand jury of Jenkins county returned two indictments against Joe Ruffin, one charging him with the murder of T. P. Stephens, the other with the murder of W. C. Brown, both offenses being alleged to have been committed in the county of Jenkins on April 13, 1919. Ruffin petitioned the judge of Jenkins superior court for a change of venue, on the ground that there was danger of an attempt to commit violence upon him if he were brought back to or allowed to remain in the county in which the crimes were alleged to have been committed. Upon the hearing on that petition a change of venue was ordered, and both cases were duly transferred to the superior court of Chatham county, where, in November, 1920, Ruffin was acquitted on the indictment charging him with the murder of Stephens, and was later acquitted of the murder of Brown also. On March 15, 1921, the grand jury of Jenkins

county returned an indictment charging him with the murder of one Edmund Scott, and alleging (according to the petitions now under review) that that offense was also committed in the county of Jenkins on April 13, 1919. Upon the return of the third indictment Ruffin presented to the judge of Chatham superior court a petition setting out the foregoing facts, and further alleging that the three killings grew out of the same affray and constituted but one transaction, and contending that by reason of such change of venue and identity of offenses, the superior court of Chatham county had the exclusive jurisdiction to try him under the third indictment returned by the grand jury of Jenkins county. He prayed for an order directing the clerk of Jenkins superior court to transmit the third indictment to Chatham superior court, " so that appropriate action may be had thereon by this honorable court, and that pending the consideration hereof he be remanded to the custody of the sheriff of Chatham county." When that petition was presented to the judge of Chatham superior court with a request for an order directing the clerk of Jenkins superior court to show cause, etc., he entered thereon the following judgment: " I am of the opinion that I have no power or jurisdiction to pass on the issues involved, that power and jurisdiction being vested in the superior court of Jenkins county and the judge thereof. The order is refused." To this judgment Ruffin excepted, taking the case by writ of error to the Supreme Court; from which it was transferred to this court because, since the constitutional amendment of 1916 (Ga. L. 1916, p. 19), this court, and not the Supreme Court, has jurisdiction of cases involving a change of venue. See *Ruffin* v. *State,* 151 *Ga.* 743 (108 S. E. 29).

Upon the refusal by the judge of Chatham superior court to assume jurisdiction of his petition, Ruffin presented to the judge of Jenkins superior court a petition containing substantially the same averments and contentions, and praying for an order directing the clerk of Jenkins superior court to transmit to Chatham superior court the third indictment, " so that all further proceedings thereon may be had by the said superior court of Chatham county," etc. On this petition a rule nisi was granted and a hearing had. In the answer filed by the solicitor-general every material averment of the petition is admitted, except as to the identity of the dates and of the transactions involved in the three several indictments.

From the evidence adduced upon the hearing is appears that the first two indictments, charging respectively the murder of Stephens and of Brown, fix the dates of the alleged offenses as April 13, 1919, while the third indictment, charging the murder of Edmund Scott, fixes the date of the alleged offense as April 13, 1920; but, under the view we take of the present writs of error, it is immaterial whether the three killings in fact occurred on the same day or not, nor is any of the other evidence adduced upon the hearing of sufficient importance to call for a statement of it here. At the conclusion of the hearing the judge passed an order denying the prayers of the petition, and, of his own motion, changed the venue of the third indictment from Jenkins county to Effingham county. To this judgment Ruffin excepted generally, and also on the special grounds: (1) that the exclusive jurisdiction to order a change of venue was in Chatham superior court; (2) that the venue was erroneously changed to Effingham county, for the further reason that it was not shown by evidence that the accused could get a fair trial in that county, and (3) that, even if Jenkins superior court had jurisdiction to order a change of venue, it should have been changed to Chatham county rather than to the county of Effingham. The second writ of error, like the first, was sued out to the Supreme Court, and was by that court transferred to this court because of the constitutional amendment of 1916, fixing the jurisdiction of the two courts of review. See *Ruffin* v. *State,* 151 *Ga.* 745 (108 S. E. 30). The two records being brought here by the same plaintiff in error and being controlled so largely by the same material facts, it is deemed best to consider them together.

1. The first question for consideration here is with respect to the jurisdiction of the trial courts over the subject-matter of the petitions. Neither of the petitions now under review is, strictly speaking, a petition for a change of venue. On the contrary, both petitions are based upon the theory that a change of venue already duly and regularly ordered as to another.indictment is equally applicable to the indictment now under consideration; and upon that theory (the soundness or unsoundness of which is another matter) the accused petitioned, first, the judge of the court to which the prior indictment was transferred, and, secondly, the judge of the court from which it was transferred, for an order to compel com-

pliance with this prior judgment. Assuming, for the purpose of this point, that the petitioner's theory was sound,— that is to say, that the last indictment in fact charged the same offense and related to the same transaction as the first,— the question then is: Did the superior court of Chatham county, to which the first case was transferred, have exclusive jurisdiction to compel compliance with this judgment changing the venue?

The jurisdiction of a court depends always upon its right to decide a case, and never upon the merits of its decision or upon the soundness of the case presented for decision. *Holbrook* v. *James H. Prichard Motor Co.,* 27 *Ga. App.* 480 (109 S. E. 164). By section 4644 of the Civil Code (1910) it is declared that every court has power to compel obedience to its own judgments, orders, and process, and to the order of a judge out of court, in an action or proceeding therein. Nothing more would seem to be necessary to show the jurisdiction of Jenkins superior court over the subject-matter of the petitions under review. While it is clearly true that, by the change of venue, Jenkins superior court lost all jurisdiction to *try* the accused upon the transferred indictment (*Johnson* v. *State,* 118 *Ga.* 310, 45 S. E. 381, 46 S. E. 488), yet it does not by any means follow that, by its own judgment changing the venue, it lost any of its original power to compel obedience to that judgment. To hold that a court lost by its own judgment the power to enforce the judgment would not only be absurd, but would also nullify the above-mentioned provision of section 4644 of the Civil Code, and would divest the court of one of its inherent and essential powers, and might conceivably result in public evils as great as those to avoid which a change of venue is authorized by law.

2. But did Chatham superior court or the judge thereof also have jurisdiction over the subject-matter of the petition? As applied to the facts of the instant case this question is both new and novel. If only one indictment were involved, or if the indictment returned after the change of venue clearly and unmistakably charged the same offense as the transferred indictment, then precedents for the situation might be found, if not in the reported decisions of this State, at least in the reports of other States. In *Johnson's* case, supra, it was held: "Upon a change of venue in a criminal case the county from which the case is transferred loses all juris-

diction to try the accused upon the indictment transferred at the time of the change, or any other indictment charging the same offense." But in that case it appeared with sufficient clearness and certainty that the two indictments in fact charged the same offense. Furthermore, in that case the right of the accused was asserted by a plea in abatement filed in the original court, and not, as in the instant case, by a petition to the new court to compel compliance with an alleged order of the original court. In 16 C. J. 220, sec. 335, it is said: "Upon a change of venue the county from which the case is transferred loses all jurisdiction ·to try the accused upon the indictment transferred at the time of the change, or upon any other indictment charging the same offense; . . but generally the new court has no jurisdiction to vacate or amend the records of the court from which the cause has been removed, although it may on application, either by certiorari or by other appropriate remedy, compel the removal of papers to it, or obtain fuller transcripts of the records of the court from which the case came." But even that authority does not necessarily contemplate a situation in which, as here, the indictment which it was sought to remove was returned into court subsequently to the original order of removal, and does not fall within the express terms or language of the original order itself; nor does it by any means contemplate a transferred indictment charging the murder of one person, and a subsequent indictment charging the murder of another person, thereby on their faces importing separate and distinct offenses. (The effect of this variance in the material averments of the two indictments will be dealt with in the third division of this opinion.) But whatever the rule may be in other jurisdictions, by section 4645 of the Civil Code of this State it is provided that "No records or papers of any court must be removed out of the county, except in cases of invasion whereby the same may be endangered, or unless by order of the court." The last two words of this section of the code, to wit, "the court," are clearly equivalent to "the judge of the court in which such records and papers are of file." And when this section of the code is considered in connection with the facts of this case and the section immediately preceding it, which declares every court to have the power to control, in furtherance of justice, the conduct of its own officers, as well as to control its own orders and enforce obedience thereto, it becomes sufficiently

clear that the judge of Chatham superior court did not err in declining to accept jurisdiction of the petition presented to him and directing the petitioner to the judge of Jenkins superior court.

Whether or not it would have been error for the judge of Chatham superior court to assume jurisdiction of the petition presented to him is a question not now presented for decision, and that question is therefore not decided. The thing that is now decided is that this judge did not err in what he did. We are not, however, unmindful of the awkward situation which might conceivably have been produced by conflicting orders of different judges directing the same official with respect to the same paper in his custody.

3. Did the judge of Jenkins superior court err in denying the prayers of the petition presented to him? In our opinion he clearly did not err. By its own terms the petition was a proceeding to compel obedience to a prior judgment of the court granting a change of venue upon a petition filed by the accused. But the petition now under review was based upon the theory that the indictment which it was sought to transfer charged the same offense as the indictment which had been transferred, and this in the face of the fact that the tranferred indictment charged the murder of one person, while the other indictment charged the murder of another and different person, both of which persons had actually been killed, if not by the accused, at least in an affray in which he participated. Whether his participation in that affray was with or without fault on his part is not a question for present consideration. That question cannot be raised either by a petition to change the venue or by petition to compel obedience to a prior order granting a change of venue. Nor can either of such petitions be used as a substitute for a plea of autrefois acquit. Such a plea, being a plea in bar, goes to the merits of the charge laid in the bill of indictment, and, under the constitution of this State, should be heard and determined by a jury, while, under the same constitution, a change of venue is in all cases a matter for decision by the judge, without the intervention of a jury. Civil Code (1910), §§ 6543, 6689. Even under a proper plea of autrefois acquit, the fact, if it is a fact, that the accused in one affray killed two or more persons does not of itself alone establish his contention that all the killings constituted but one transaction. *Crocker* v. *State*, 47 *Ga.* 568; *Johnson* v. *State*, 65 *Ga.* 94 (2);

*Downing* v. *State, 66 Ga.* 160 (2); *Gully* v. *State,* 116 *Ga.* 527 (1) (42 S. E. 790); *Bone* v. *State,* 11 *Ga. App.* 128 (74 S. E. 852). With how much greater reason, therefore, does such a fact fall short of the result claimed by the petitioner in a proceeding like that now under review, where the merits of the criminal offense are not even open to inquiry? The judge of Jenkins superior court therefore did not err in denying the prayers of the petition, but thereby merely refused to usurp the lawful function of the jury.

4. The next question presented for decision is: Did the judge of Jenkins superior court err when, on his own motion, he ordered the venue of the indictment last returned changed from Jenkins county to Effingham county? This question must, we think, be answered in the negative. By the constitution of this State (Civil Code of 1910, § 6543), it is provided that " all criminal cases shall be tried in the county where the crime was committed, except cases in the superior courts where the judge is satisfied that an impartial jury cannot be obtained in such county." To give effect to that provision of the constitution, two statutes were enacted, one in 1895, the other in 1911, both of which are now embraced in section 964 of Park's Penal Code. While these two statutes are embraced in the same section of that code, and while they have the same ultimate aim and object, namely, to insure a full and fair trial of every criminal case upon its merits by an impartial jury, yet, by their express terms and provisions, the two statutes are designed to meet the evil of two entirely different situations, and they accordingly provide materially different modes of procedure for these different situations. Some of these differences, and the reasons therefor, are pointed out in the opinion in *Coleman* v. *George,* 140 *Ga.* 619 (79 S. E. 543). Under that opinion and the terms of the statute itself, the act of 1895 is applicable only where bias on the part of jurors makes it so, and it can be invoked by the defendant alone " whenever, in *his* (the defendant's) judgment, an impartial jury cannot be obtained in the county where the crime was committed." If his petition for a change of venue under the act of 1895 is decided adversely to him, his only remedy is to except pendente lite; and if it is decided favorably to him, then the solicitor-general and the accused, or his counsel, must be given an opportunity to agree upon a county to which the case shall be transferred, and they must fail so to agree,

before the judge who orders the change of venue is authorized to select the county to which the venue will be changed. On the other hand, the act of 1911 is applicable only where there is danger of mob violence, but it is applicable in such a case irrespective of bias or the want of bias on the part of jurors; and the act of 1911 may be invoked by the accused, or the judge may act " on his own motion, with or without petition, whenever, in *his* [the judge's] judgment, the accused party will be lynched, or there is danger of violence being attempted to be committed on said accused, if carried back [to], or allowed to remain in, the county where the crime is alleged to have been committed." If the accused petitions for a change of venue under the act of 1911 and his petition is decided adversely to him, his only remedy is a final bill of exceptions to this court; but where it is decided favorably to him, as well as where the judge, on his own motion, orders a change of venue, " it shall be mandatory on said judge to change the venue to such county in this State as, in *his* [the judge's] judgment, will avoid such lynching," without necessarily consulting either the solicitor-general or the accused, or his counsel.

In the instant case the judge, on his own motion, changed the venue from Jenkins county to Effingham county, to avoid the danger of mob violence; and in doing so he was well within the power conferred upon him by the act of 1911. To so order, he needed neither pleadings nor sworn testimony, nor anything else save a belief, derived from personal familiarity with local conditions, that the danger of mob violence contemplated by the law existed, together with the courage to seek to avoid such violence by changing the venue of the case to a county in which he believed that a legal, fair, and impartial trial could be had without danger of such violence. In the state of the present record, the order itself sufficiently establishes these essentials.

5. The complaint that there was no evidence to show that the accused could get a fair trial in Effingham county is controlled by the rules of law above discussed. Such complaint is wholly without merit. No evidence as to that matter was necessary, beyond the judge's opinion derived from personal familiarity with local conditions. If he made a mistake in so selecting the county of Effingham, the accused, not having had his day in court upon that question, is not concluded thereby. On the contrary, if an im-

partial jury cannot be obtained in Effingham county, or if there is danger of mob violence in that county, then the remedies for a second change of venue are open to the accused and to the superior court of Effingham county and the judge thereof as fully and completely as if the indictment had been returned by the grand jury of Effingham county, alleging the offense to have been committed in that county. As to this matter, see the majority opinion in *Johnston* v. *State,* 118 *Ga.* 310 (45 S. E. 381).

It follows, from what is said above, that both of the judgments complained of are free from error.

*Judgments affirmed. Broyles, C. J., and Bloodworth, J., concur.*