## BISHOP *v.* BISHOP.

1. A party, though introduced as a witness in his own behalf, may, upon cross-examination as to matters not voluntarily testified about on his direct examination, decline to give testimony which would tend to criminate him, or to bring infamy, disgrace, or public contempt upon himself. Civil Code (1910), § 4544; Constitution of 1877, art. 1, sec. 1, par. 6; Civil Code (1910), § 6362; *Marshall* v. *Riley,* 7 *Ga.* 367; *Georgia Railroad &c. Co.* v. *Lybrend,* 99 *Ga.* 422 (27 S. E. 794); *Calhoun* v. *State,* 144 *Ga.* 679 (87 S. E. 893).

2. Where the husband, who was sworn as a witness in his own behalf in an action brought by him against his wife for divorce, was questioned as to a matter to which he did not refer in his direct examination, and which would incriminate him, and, on being informed by the court that he could decline to answer the question, if it tended to incriminate him, the witness remained mute, his silence should have been construed to mean that he availed himself of his constitutional privilege to decline to testify as to such matter, where an affirmative answer would manifestly tend to criminate or disgrace him.

3. When, informed by the court that he must either answer the question or else state his reason for not answering it, the plaintiff remained silent, his failure to answer the incriminating question, or to state his reason for not answering it, would not authorize the court to dismiss his libel for divorce. In *Williams* v. *Turner,* 7 *Ga.* 348, and in *Howard* v. *Chamberlin,* 64 *Ga.* 684 (4), the questions were ones which the witnesses could properly be required to answer, and were not, as in the present case, questions such as by law the witnesses were not bound to answer.

### No. 3986. JANUARY 24, 1924.

Libel for divorce. Before Judge Tarver. Murray superior court. August 13, 1923.

*William E. & W. Gordon Mann,* for plaintiff.

*R. Noel Steed* and *J. M. Lang, solicitor-general,* for defendant.

HINES, J. John Bishop filed his libel for divorce against his wife, Alice Welch Bishop, on the ground of willful and continued desertion for more than three years. On the trial of the case he testified to their marriage, the willful and continued desertion of himself by his wife for a period greatly exceeding three years, and that he was a resident and citizen of this State for more than twelve months before the filing of this suit. On his cross-examination, counsel representing the wife asked him if he had not, on May 19, 1908, been married to one Della Wadsworth at Tumberlin, Lake [Lonoke?] County, Arkansas. The court instructed the witness, if he saw fit, he could decline to answer the question, if it tended to incriminate him; the court further saying to the wit-

ness that he was under oath, sworn to tell the truth, and that the court wanted his answers to be truthful. Counsel for the wife again repeated the question substantially to the witness, but stated in addition the name of the justice of the peace who performed the marriage ceremony, the name of the county clerk who issued the license, and the date thereof. The husband stood mute. This colloquy then took place: By the court: "What do you say, Mr. Bishop? Either answer the question or state your reason for not answering it. Do one or the other, Mr. Bishop, and let's get along." Witness: "What do you want me to answer?" The court: "Read him the question." This was done. The court: "Answer the question or else state your reason for not answering it." Witness: "I told you," and here the witness stopped. The court: "I will dismiss your case, if you don't do one or the other." After waiting a few minutes, the court said: "Well, take an order dismissing his case. Let me see the paper you have in your hand, Mr. Steed," the latter being the attorney for the wife. The paper referred to was a marriage license issued by the county clerk of Lonoke County, Arkansas, dated May 18, 1908, and authorizing the marriage of John Bishop to Della Wadsworth, with the certificate of a justice of the peace that on May 19, 1908, he had solemnized the marriage of these parties. This document was not offered in evidence by either of the parties, but was introduced in evidence by direction of the court. Thereupon the court passed an order dismissing the suit; to which judgment the plaintiff excepted on the ground that it was contrary to law, in that the case, under the evidence, should have been submitted to the jury.

The headnotes need not be elaborated.

*Judgment reversed. All the Justices concur.*

Russell, C. J., concurring specially. There are cases in which judgments of lower courts have been affirmed in which the plaintiff's cause was dismissed because of his failure to respond and make answer to proper questions. But this case, as we hold, does not fall under those decisions, and the trial judge erred in dismissing the petition in the present case. I concur in the reasons given by Mr. Justice Hines why the dismissal in the present case was erroneous, and these reasons are most aptly stated. In addition to these reasons, however, another reason suggests itself to my mind, which of itself would be controlling in the judgment. The trial judge could not rightfully dismiss the plaintiff's case for re-

fusing to answer a question which in the opinion of the witness tended to criminate him, unless it plainly appeared that the witness had wrongly adjudged the effect of his answer. From the record it seems clear to me that the case falls within the ruling in *Empire Life Insurance Co.* v. *Einstein,* 12 *Ga. App.* 380 (77 S. E. 209), and the cases cited therein. "As a general rule, it is the province of the court to determine the competency of both the evidence and the witness; and if the judge decides that the witness is incompetent, his ruling will not be interfered with, unless it is manifestly erroneous. A trial judge may determine the competency of a witness without submitting to him questions designed to elicit specific information as to particular points. In this event, the court passes upon the competency of the witness. When, however, the witness is otherwise competent, he may decline to answer questions which tend to criminate him; and in this event the witness, and not the judge, is to determine whether the answer to the question propounded to him will have the effect of subjecting him to punishment for crime."

"In the trial of Aaron Burr (Fed. Cas. No. 14,692e) the Chief Justice ruled as follows: 'When a question is propounded, it belongs to the court to consider and to decide whether any direct answer to it can implicate the witness. If this be decided in the negative, then he may answer it without violating the privilege which is secured to him by law. If a direct answer to it *may* criminate himself, then *he* must be the sole judge of what his answer would be. The court cannot participate with him in this judgment, because they cannot decide on the effect of his answer without knowing what it would be; and a disclosure of that fact to the judges would strip him of the privilege which the law allows, and which he claims. It follows necessarily, then, from this state of things, that if the question be of such a description that the answer to it may or may not criminate the witness, according to the purport of that answer, it must rest with himself, who alone can tell what it would be, to answer the question or not. If, in such a case, he say, upon oath, that his answer would criminate himself, the court can demand no other testimony of the fact.' And in answering the construction placed by the counsel for the United States upon this rule, and which the Chief Justice declares to be too narrow, the court says, that to compel a witness to answer a question when the answer, connected with other testi-

mony, would be insufficient to convict him of crime, would be rendering the rule almost perfectly worthless. Many links frequently compose that chain of testimony which is necessary to convict any individual of a crime. It appears to the court to be the true sense of the rule that no witness is compellable to furnish any one of them against himself. It is certainly not only a possible, but a probable, case, that a witness, by disclosing a single fact, may complete the testimony against himself, and to every effectual purpose accuse himself as entirely as he would by stating every circumstance which would be required for his conviction. That fact of itself might be unavailing, but all other facts without it might be insufficient. While that remains concealed within his own bosom he is safe; but draw it from thence, and he is exposed to prosecution. The rule that declares that no man is compelled to accuse himself would most obviously be infringed by compelling a witness to disclose a fact of this description. What testimony may be possessed, or is attainable, against any individual, the court can never know. It would seem, then, that the court ought never to compel a witness to give an answer which discloses a fact which might form a necessary and essential part of a crime, which is punishable by the laws." Citing 1 Burr's Trial, 244, 245. See Brown v. Walker, 161 U. S. 613 (16 Sup. Ct. 644, 40 L. ed. 827).

In the present case it was apparent from the manner of the witness that he did not desire to testify, and that he was not a competent witness in the sense that he was not such a witness as should be compelled to answer the question propounded.