### 25114. SMITH v. THE STATE.

FRANKUM, Justice. The accused was indicted, tried and convicted of the crime of murder. He thereafter filed a motion for a new trial which was subsequently amended, and after a hearing denied. The appeal is from the conviction and sentence of death, with error enumerated in nineteen separate complaints on the allowance of evidence, charge of the court,

and denials of motions, including the motion for new trial as amended. *Held:*

1. Even though the jury box contained the names of persons 65 years or older, who had not requested in writing to serve on the jury, this was not ground for the defendant to object since this fact alone would not work the disqualification of a juror. See *Code Ann. Ch.* 59-1 (Ga. L. 1953, Nov. Sess., pp. 284, 286; 1953, Nov. Sess., p. 328; 1967, p. 725; and 1968, p. 533). *Code Ann.* § 59-112, as amended (see above) not only does not disqualify the classes there mentioned, but merely grants them the privilege of being left out of the jury box unless they signify a willingness to serve. This provision is solely for the benefit of those in the classes but allows them to express a willingness to serve. Thus they are not ineligible to serve, and litigants must accept them as jurors if they decide to serve, unless they are excused or rejected on one or more of the grounds provided by law. There is no merit in this complaint; hence neither the motion to dismiss and quash the indictment nor the challenge to the array of traverse jurors has substance. See also *Cash v. State,* 224 Ga. 798 (164 SE2d 558).

2. The various items recited in support of the motion for a change of venue did not show an inability of the defendant to get a fair trial. The examples of publicity presented in this case do not show a prejudice of the minds of all the people and jurors, and we hold that it did not violate any of the defendant's rights. No grounds for sending the case to another county appear. *Rawlins v. State,* 124 Ga. 31, 40 (2) (52 SE 1); *Anderson v. State,* 222 Ga. 561 (2) (150 SE2d 638). Nor was there error in not giving defendant's counsel more time to question a State's witness. The court was liberal beyond legal requirements in allowing the interview made.

3. The order of the court directing the clerk not to file the notice of appeal from the overruling of appellant's motion for a change of venue was erroneous since the court has no such authority. The motion for a change of venue was based solely on the ground that a fair and impartial jury could not be obtained in the county in which the indictment was returned. Under the rulings of this court in *Coleman v. George,* 140 Ga. 619 (2) (79 SE 543) and *Anderson v. State,* 190 Ga. 455, 457 (9 SE2d 642), the overruling of such a motion did not constitute an appealable judgment. Therefore, any appeal

which might have been filed and brought to the Court of Appeals from that ruling would have been premature and subject to be dismissed. Defendant has asserted in this appeal his contentions with respect to the merits of his motion. Under these circumstances this ground of enumerated error does not show harmful error.

4. There being evidence to support the jury verdict, the general grounds of the motion for a new trial are without merit. *Curtis v. State*, 224 Ga. 870, 875 (165 SE2d 150).

5. The court did not abuse its discretion in refusing to allow the examination of prospective jurors one at a time out of the presence of each other.

6. There was no showing that the bailiffs having charge of the jury were not sworn, and there is no merit in this complaint.

7. In this case, the witness, Carol Jean Cone Smith, and the defendant appear to have been living together as man and wife. She had also been indicted for the same offense for which the defendant was on trial. She voluntarily testified against him. Her testimony was in part to the effect that the defendant had her call the deceased on the telephone and arrange for the deceased to meet her at some place; that she did this "because he threatened me"; that she drove her automobile and met the deceased who was driving his automobile pursuant to that arrangement; that the defendant was lying down in the back seat of her car and had a gun, a .32 automatic; that after meeting the deceased they drove their respective automobiles to another and more isolated location, and the deceased got out of his automobile and came back to her automobile, whereupon the defendant got out of the automobile with the pistol in his possession and compelled the deceased to removed the spare tire from his automobile and place it in her automobile; and that after taking the deceased to another location the defendant tied the deceased's hands and feet while the witness held the gun, and after taking his billfold, the defendant shot the deceased. She testified that the only reason that the defendant gave her for having her call the deceased to meet her was that they needed a tire. No testimony had been elicited from her on direct examination concerning her relationship with or knowledge of the deceased, either prior to or subsequent to her marriage to the defendant, nor was any such testimony elicited from her on direct examination concerning her relations with or knowledge

of other men prior to the claimed marriage between the witness and the defendant. She testified on cross examination that she had not been with any other boys or men, including the deceased, and had not even seen the deceased in the year 1967 prior to the night the defendant had her to call him. On cross examination, counsel for the defendant sought to elicit from this witness testimony in the nature of admissions concerning improper relations, not only with the deceased, but with several other named men, both before and after her marriage to the defendant. The witness denied improper conduct with the deceased, subsequent to her marriage to the defendant, but did admit having had sexual relations with at least one other man prior to her marriage. However, with respect to the deceased, she refused to say that she had had any such relations with him, upon the ground that it might tend to incriminate her. Counsel for the defendant then moved to exclude her entire testimony. The court overruled that motion, and that ruling is the one enumerated as error in ground 15 of the enumeration of errors.

Cited in support of the position of the appellant on this enumeration of error are the cases of *Pinkard v. State,* 30 Ga. 757; *Young v. State,* 65 Ga. 525; *McElhannon v. State,* 99 Ga. 672 (26 SE 501); *Hays v. State,* 16 Ga. App. 20, 21 (84 SE 497), and *Pilcher v. State,* 93 Ga. App. 605, 608 (92 SE2d 318). None of these cases supports this contention. The true rule is that when a witness declines to answer on cross examination certain pertinent quetions relevant to a matter testified about by the witness on direct examination, all of the witness' testimony on the *same subject matter* should be stricken. *Hays v. State,* supra, and *Boyett v. State,* 16 Ga. App. 150 (84 SE 613). The witness' claim of privilege against self-incrimination in this case was with respect to matters sought to be elicited on cross examination which were wholly collateral to and unrelated to her testimony in chief, and was with respect to separate transactions, in no way shown by her testimony to be connected with the crime with which the defendant here was charged. In *Pinkard v. State,* 30 Ga. 757 (2), supra, the ruling was merely that the court should have ruled out the testimony as to the whole of the *conversation* in which the witness had participated when he refused to testify on cross examination as to all he had to do with the transaction involved. In *Young v. State,* 65 Ga. 525, 527,

supra, the ruling was merely to the effect that the particular conversation should be excluded from the jury if the witness on cross examination should invoke the privilege of freedom from self-incrimination with respect thereto. In *McElhannon v. State*, 99 Ga. 672, 681, supra, the defendant was indicted for mutilating and destroying certain books of account of a corporation for the purpose of defrauding the corporation. A witness for the State was permitted to testify under direct examination that the accused had been seen gaming, the theory on which this testimony was admitted being to show motive for the act with which the accused was charged. On cross examination, this witness declined to reveal the identity of the person with whom the accused had been gaming on the ground that to do so might tend to incriminate him. The ruling of the court was that it then became "the right of the accused to have all of the witness's testimony *on this subject* ruled out." (Emphasis supplied.) The same was the ruling in *Hays v. State*, supra. In the case of *Pilcher v. State*, 93 Ga. App. 605, 608, supra, the Court of Appeals volunteered, in what is clearly obiter dictum, the statement that where a witness had testified as to a particular transaction, but had kept silent on the ground of self-incrimination on cross examination a proper and timely motion to rule out the witness' entire testimony should be sustained, but that since such a motion was not made in the case, no ruling in that regard would be required. The court there stated that such a motion was made in the *McElhannon* case, and cited it as authority for the statement. However, an examination of the *McElhannon* case will show that it is not authority for that statement, and to the extent that the *Pilcher* case extends the rule beyond its previous limitations, we must disapprove it. Entirely consistent with the ruling which we here make was the ruling by this court in the case of *Bishop v. Bishop*, 157 Ga. 408 (121 SE 305).

No Georgia case has been found which clearly and explicitly lays down the rule which we deem to be the correct rule on this issue. However, there are a number of decisions by circuit courts of appeals which clearly recognize and enunciate the rule which we deem to be implicit in the cases decided in this State. In *United States v. Cardillo*, 316 F2d 606, the court said: "Since the right to cross-examine

is guaranteed by the Constitution, a federal conviction will be reversed if the cross-examination of government witnesses has been unreasonably limited. E.g., Alford v. United States, supra; United States v. Masino, 2 Cir. 1960, 275 F2d 129; United States v. Lester, 2 Cir. 1957, 248 F2d 239. However, reversal need not result from every limitation of permissible cross-examination and a witness's testimony may, in some cases, be used against a defendant, even though the witness invokes his privilege against self-incrimination during cross-examination. In determining whether the testimony of a witness who invokes the privilege against self-incrimination during cross-examination may be used against the defendant, a distinction must be drawn between cases in which the assertion of the privilege merely precludes inquiry into collateral matters which bear only on the credibility of the witness and those cases in which the assertion of the privilege prevents inquiry into matters about which the witness testified on direct examination. Where the privilege has been invoked as to purely collateral matters, there is little danger of prejudice to the defendant and, therefore, the witness's testimony may be used against him. United States v. Kravitz, 3 Cir. 1960, 281 F2d 581; Hamer v. United States, 9 Cir. 1958, 259 F2d 274; United States v. Toner, 3 Cir. 1949, 173 F2d 140. On the other hand, if the witness by invoking the privilege precludes inquiry into the details of his direct testimony, there may be a substantial danger of prejudice because the defense is deprived of the right to test the truth of his direct testimony and, therefore, that witness's testimony should be stricken in whole or in part. Montgomery v. United States, 5 Cir. 1953, 203 F2d 887." That case has been followed in a number of more recent cases including Smith v. United States (CCA 8) 331 F2d 265, and Coil v. United States (CCA 8) 343 F2d 573. In view of these authorities, we hold that there is no merit in the contentions of the appellant with respect to his 15th ground of enumerated error.

Furthermore, there was nothing brought out in this witness' testimony on direct or cross examination which would indicate that the questions propounded or any possible answers thereto would have been relevant to the issue being tried. *Hyde v. State*, 70 Ga. App. 823 (1) (29 SE2d 820).

8. In his order overruling the appellant's motion for a new trial

the trial judge said in part: "With reference to ground 7: This court is fully aware of the ruling of the Supreme Court in *Miller v. State*, 224 Ga. 627. In the event the verdict of 'guilty' is affirmed, the procedure with reference to the sentence, as outlined in *Miller* will be followed." Ground 7 of the motion for a new trial relates to the exclusion of certain jurors from the panel on the ground that they had indicated that they were conscientiously opposed to capital punishment. In the *Miller* case cited by the trial judge, the defendant was convicted of a capital offense without recommendation of mercy by a jury which had been qualified, as was the jury in this case, so as to exclude those conscientiously opposed to capital punishment. In affirming the verdict and judgment of conviction, this court directed that the sentence imposed on the verdict be reversed with direction that the trial court impanel a jury selected as in a capital punishment case for the submission to it of the sole question of whether the defendant should be recommended to the mercy of the court, and that he be sentenced accordingly. In view of the ruling of the trial judge in his order overruling the motion for a new trial, it would seem to be unnecessary that a direction be given in this case similar to the direction given in the *Miller* case. However, from an abundance of precaution, the sentence of death will be reversed with direction that the procedure outlined in *Miller* be followed.

9. Having advised counsel that if he desired to submit some of the contents of a certain letter in evidence, he would authorize its entire contents, the court did not err in restricting counsel in his cross examination of the witness as to the letter and some of its contents, since the letter was the highest and best evidence of its contents and counsel for appellant was strongly insisting that he did not desire to offer evidence in order to avoid losing the right to the final argument. _Clifton v. State, 187 Ga. 502, 508 (2 SE2d 102); *Sullivan v. State*, 222 Ga. 691, 692 (152 SE2d 382).

10. Several grounds of enumerated error relate to the charge of the court submitting to the jury the defense of alibi, and to statements made by the court in withdrawing that charge. In his order overruling the motion for a new trial, and with respect to these contentions, the trial judge said: "Every single word that was said to the jury with reference to withdrawing the charge was requested by Mr. Reuben A. Garland," who,

the record shows, was chief counsel for the defendant. "A party cannot obtain a reversal for an error which he has invited, as by a request to charge." *Coleman v. State,* 141 Ga. 737 (4) (82 SE 227). These grounds show no cause for reversal.

11. The evidence amply authorized the verdict of guilty. The evidence of the accomplice, which was the only eyewitness testimony respecting the actual commission of the crime, was corroborated in several respects. None of the other grounds of enumerated error which have been argued and insisted upon by counsel for the appellant show cause for reversal.

*Judgment affirmed in part and reversed in part with direction. All the Justices concur, except Duckworth, C. J., and Almand, P. J., who dissent from the rulings in Headnote 7 and from the judgment of affirmance.*

ARGUED APRIL 14, 1969—DECIDED MAY 22, 1969— REHEARING DENIED JUNE 12, 1969.

*Garland & Garland, Reuben A. Garland, Edward T. M. Garland,* for appellant.

*Andrew J. Whalen, Solicitor General, Arthur K. Bolton, Attorney General, Marion O. Gordon, Mathew Robins, Assistant Attorneys General,* for appellee.

DUCKWORTH, Chief Justice, dissenting. Irrespective of the bestial manner of the killing, or the strong evidence of the defendant's guilt, he is entitled to every right conferred upon him by law. This court did not write *Code* § 38-1705. Nor can this court amend or repeal it. But every Justice is bound by oath to accord every person, including this defendant, the valuable right conferred by that law. It provides as follows: "The right of cross-examination, thorough and sifting, shall belong to every party as to the witnesses called against him." To those not experienced in the trial of cases this right might not appear important, but experienced lawyers know that one of the most important parts of a trial in discovering the truth and smashing lies is an intelligent cross examination. The legislature considered it important enough to justify the enactment of *Code* § 38-1705 which expressly and without any qualification whatever vests in every party this right to cross examine every

witness called against him. Courts have no right to abridge or deny this right for any reason. It can be denied only by defying the law. This means that no matter what the causes—whether sickness, the Fifth Amendment, or what—*this right must never be denied*. It is no proper function of judges to dream up hypothetical cases where obeying this rule might cause a case to be lost. I say to them that the legislature alone could add exceptions, but it has not.

Nor has this legally invested right in the remotest degree been altered by arguing that in *Pinkard v. State,* 30 Ga. 757; *Young v. State,* 65 Ga. 525; and *McElhannon v. State,* 99 Ga. 672, all supra, the cross examination related to a part of what had been testified by the witness on direct examination. In each of those cases because cross examination was denied, it was held that the direct testimony should be ruled out. Those cases sustain my position to the extent they held denial of cross examination required exclusion of the direct testimony of the witnesses. In none of them was it held or intimated that a denial of cross examination on any relevant matter would not require the exclusion of the direct testimony. In each of those cases the real purpose of cross examination was to test the correctness of the witness's direct testimony which involved the credibility, the bias and interest of the witness. This was precisely the purpose of the cross examination in this case. Can this court be "side-tracked" into such frivolities while called upon to decide if one has been lawfully sent to the electric chair? Every decision I make on that question of life or death is made with fear and trembling, but I could never make such a momentous decision, knowing I had sanctioned a denial of the condemned person's right given him by our lawmakers to thoroughly and siftingly cross examine a State's main witness irrespective of the reason for denying this vital right.

Look at the actual condition of this case. This woman, the State's prime witness, is shown to have been living unlawfully with the accused. She had also, without doubt, had relations with the deceased, although she admitted only to having dates with him and refused to answer when asked directly about sexual relations with him. Here she was testifying to a bestial

slaying when she had seduced the deceased to meet her. Then when time to discover liars, reveal motives and test credibility came, and she was asked on cross examination if she had ever had sexual intercourse with the deceased, she told counsel that this was none of his business and hid behind the Fifth Amendment. She admitted to being the common law wife of at least two other men and having sexual relations with another. Was there fear of incrimination when the evidence had shown her a criminal in many respects? Or was she deliberately hiding valuable information surrounding this crime? Besides she was indicted for the same killing. A lawyer would be naive indeed to think a probing cross examination would not ultimately have shown she was a liar, and perhaps a murderess. To say this would not benefit the accused is to reveal an ignorance in the trial of cases. The prevented cross examination, "thorough and sifting," simply cut the heart out of the defendant. While the assigned error here is the ruling denying the motion to exclude all the testimony of this witness and there were other means of protecting the right to cross examine, yet since the court took none of the other actions *Code* § 38-1705 demanded that the motion to exclude be sustained. In *Gale v. State,* 135 Ga. 351 (69 SE 537), when the witness became ill and thus defeated cross examination, the trial judge offered to declare a mistrial, and the accused rejected a mistrial, it was held not error to refuse to rule out the direct testimony of the witness involved. Thus this court recognized the binding effect of *Code* § 38-1705, and since the trial court had proposed an action which would have completely protected the right of the accused under *Code* § 38-1705, this court refused to reverse solely because the trial court failed to do one of the two acts of protecting the right to cross examine when the court's offer to declare a mistrial which would have completely and effectively protected the right under *Code* § 38-1705 was rejected. In that opinion Justice Lumpkin quoted extensively from Wigmore, including the following: "It seems harsh measure to strike out all that has been obtained on direct examination. Nevertheless, principle requires in strictness nothing less." He quoted from Sturm v. Atlantic Mutual Ins. Co., 63 N. Y. 77, the following: "It may be taken as the

rule, that where a party is deprived of the benefit of the cross examination of a witness, by the acts of the opposite party, or by the refusal to testify or other misconduct of the witness, or by any means other than the act of God, the act of the party himself, or some cause to which he has assented, that the testimony given on the examination-in-chief may not be read." At page 352 Justice Lumpkin said: "Undoubtedly the right of cross-examination is a valuable right; and if it be improperly denied, a reversal must result." The statements and citations of authority in that opinion sustain my position here.

The lesson here for discerning and conscientious judges is that a court must offer to take some action that will preserve the right under *Code* § 38-1705, but when offers to thus act are rejected, the court is not required to take another action. There, strategy obviously was employed—an offer to take action that renders the accused still possessed of his full rights, under *Code* § 38-1705, was enough to justify denying him an alternative right, all of which would have preserved his rights under *Code* § 38-1705. All that one can claim under this law is the right to cross examine every witness called against him. When he is denied this right, a mistrial would protect his right. If he declines that he must be held to have waived the right. But where as here, he was not offered an alternative and asks that the testimony of the witness who testified against him on direct examination be ruled out, he was entitled as a matter of law to have the witness's testimony excluded. "It is erroneous to abridge the right of cross-examination, and to do so is generally cause for the grant of a new trial. *Barnwell v. Hannegan,* 105 Ga. 396 (31 SE 116); *Atlantic Coast Line R. Co. v. Powell,* 127 Ga. 805 (56 SE 1006, 9 LRA (NS) 769)." *Becker v. Donaldson,* 133 Ga. 864, 869 (67 SE 92). See *Rabun v. Wynn,* 209 Ga. 80 (5) (70 SE2d 745), to the same effect. The entire record of the Supreme Court sustains this vital rule. *Bishop v. Bishop,* 157 Ga. 408, cited by the majority, is not even relevant to this question. In that case, the plaintiff, as a witness for himself, refused to answer a question on cross examination, and the court dismissed his case. This court reversed. That decision did not raise the question of a denial of cross examination, but it merely

held a witness could invoke the Fifth Amendment and his entire case could not be dismissed when he did so. To say as the majority do that this case fits the instant one is to show an utter misconception.

Any experienced lawyer knows that the cross examination tended to discredit the witness and might well have led to an exposure of her own guilt because of jealousy of the murdered. Hell has no "fury like a woman scorned." "The state of the witness's feeling to the parties, and his relationship, may always be proved for the consideration of the jury." *Code* § 38-1712. Particularly is this true when the witness is the defendant's paramour. *Perdue v. State,* 126 Ga. 112 (54 SE 820); *Lundy v. State,* 144 Ga. 833 (1) (88 SE 209). Financial or blood relationship may affect the testimony of the witness and evidence thereof is admissible when relevant to the credibility of the witness. *Futch v. State,* 90 Ga. 472 (16 SE 102); *Myers v. State,* 97 Ga. 76 (25 SE 252). How could anyone dare say the relationship of this woman with the slain man was irrelevant to her credibility? Had she had intercourse with him? Was it because of love, and was she disappointed to learn he did not care for her but intended to marry another? All this was potentially revealable had the cross examination been permitted to continue, "thorough and sifting," as *Code* § 38-1705 gave the accused the right to do. What kind of warped scales of justice would allow her testimony in chief to remain against this accused while, sheltered by the Fifth Amendment, she refused to answer questions on cross examination that tended to and might well have exposed her entire testimony as the pratings of a disappointed lover, and even a murderess? Her direct testimony put her bias and credibility on the line. I dare say the questions she refused to answer will by the majority be conceded to have been relevant to this subject. If she could be shown to be unworthy of belief, this touched all of her testimony, and the jury might well have disbelieved her. But when she took refuge behind the Fifth Amendment, which she had the right to do, the door was closed insofar as putting her testimony to the test of the white light of truth. Even a layman, and almost any child, would know this effectively shielded her testi-

mony from the test of credibility, and hence it was unfair.

The sentence this defendant faces, if carried out, means he must die in the electric chair mainly because of the testimony of this witness who by resort to the Fifth Amendment privilege, failed and refused to give answers to all these questions. I would never consent to such. The probing cross examination pointed to the very "guts" of this case, and a defendant cannot under *Code* § 38-1705, be denied this valuable right. If he dies let it be legal.

In light of the foregoing, I have no alternative but to dissent from the judgment of affirmance.